## UNITED STATES *v.* WRIGHT.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR
THE EASTERN DISTRICT OF OKLAHOMA.

No. 918.   Argued April 11, 1913.—Decided May 26, 1913.

In determining the effect of statutes regarding the introduction of liquor into Indian country, within the territorial limits of Oklahoma, every consideration arising out of the guardianship of the Federal Government over the Indians and control of their land indicate that as to them the liquor prohibition should be maintained after Statehood so far as consistent with the control of the State over its internal police.

The liquor prohibition, so far as it concerns Indians, has always been deemed one of the peculiar responsibilities of the Federal Government.

The provisions of § 2139, Rev. Stat., as amended by the acts of July 23, 1892, and January 30, 1897, so far as they related to the introduction of liquor into the Indian Territory from points outside of that Territory, but within what is now Oklahoma, have not been repealed, either expressly or by implication, by the Oklahoma Enabling Act.

THE facts, which involve the construction of the various acts relating to the introduction of intoxicating liquor into Indian country in Oklahoma, are stated in the opinion.

*Mr. Assistant Attorney General Denison* for the United States.

*Mr. James C. Denton* for defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

The defendant in error was indicted in the United States District Court for the Eastern District of Oklahoma, the charge being that—"on the nineteenth day of March, in the year 1912, in the County of Muskogee, in the said

District, and within the jurisdiction of said court, the said county and district then and there being a portion of the Indian country of the said United States, (he) did at the time and place aforesaid, unlawfully, wilfully, knowingly, and feloniously introduce into said Indian country one quart of malt, vinous, spirituous, distilled, ardent, and intoxicating liquor, to-wit, whiskey. Contrary to the form of the statute in such case made and provided,".etc.

The District Court sustained his demurrer, and the case is brought here under the Criminal Appeals Act.

The statutes involved are: § 2139, Rev. Stat., as amended by the act of July 23, 1892, c. 234, 27 Stat. 260, and by the act of January 30, 1897, c. 109, 29 Stat. 506; also § 8 of the act of March 1, 1895, c. 145, 28 Stat. 693; and the Oklahoma Enabling Act of June 16, 1906, c. 3335, 34 Stat. 267. Extracts from these are set forth in footnotes to the opinion in *Ex parte Webb*, 225 U. S. 663, 671, 677. Muskogee County is a part of what was the Indian Territory.

The District Court in effect construed the indictment as charging, not an interstate transaction, but an introduction of liquor from a point within the State of Oklahoma, but outside of what is now Indian country, into such Indian country. The decision of this court in the *Webb Case*, which had to do with § 8 of the act of March 1, 1895, and the effect of the Enabling Act upon it; and also the decision of the Circuit Court of Appeals for the Eighth Circuit in *United States Express Co.* v. *Friedman*, 191 Fed. Rep. 673, and *Mosier* v. *United States*, 198 Fed. Rep. 54,—both of which turned upon the effect of the Enabling Act upon the act of January 30, 1897;—were reviewed by the District Court, and the conclusion reached, principally because of the line of reasoning expressed in the opinion in *Ex parte Webb*, was "That the provisions of § 2139, Rev. Stat., as amended by the act of 1892 and the act of 1897, so far as they related, if at all, to the introduction

of liquor into the Indian Territory from points outside of that Territory, but within what is now Oklahoma, must be considered as having been repealed by the Enabling Act."

And again: "This confines offenses of this character, of which the Federal court has jurisdiction, to those in which the liquor is introduced from a point without the State. It is a violation of the state law, as established by the constitutional provision above referred to, to introduce liquor into what was formerly Indian Territory from some other portion of Oklahoma, but such violation is an offense exclusively within the jurisdiction of the state court. In order to give the Federal court jurisdiction, it is necessary that the introduction of the liquor should have been from a point without the State. This is an essential element of the offense, so far as the Federal court is concerned, and should therefore be charged in the indictment. It follows that the demurrer must be sustained."

The Criminal Appeals Act, March 2, 1907, c. 2564, 34 Stat. 1246, provides for a writ of error, to be taken by the United States from the District Court direct to this court, from a decision or judgment sustaining a demurrer to an indictment, "Where such decision or judgment is based upon the invalidity, or construction of the statute upon which the indictment is founded." The present case is clearly within this act, as previously interpreted and applied. *United States* v. *Sutton*, 215 U. S. 291, 294; *United States* v. *Keitel*, 211 U. S. 370, 385; *United States* v. *Biggs*, 211 U. S. 507, 518; *United States* v. *Stevenson*, 215 U. S. 190, 195; *United States* v. *Miller*, 223 U. S. 599, 602; *United States* v. *Patten*, 226 U. S. 525, 535; *United States* v. *George*, 228 U. S. 14, 17; *United States* v. *Anderson*, 228 U. S. 52; *United States* v. *Pacific & Arctic Co.*, 228 U. S. 87, 100.

Upon the merits, the principal question is whether the acts of 1892 and of 1897 were repealed, as to intra-state

transactions, by the effect of the Enabling Act and the admission of the State, with the constitutional prohibition of the liquor traffic that was prescribed by that act. It is not contended that there was any express repeal. The insistence that there was a necessary repeal by implication, is supported by arguments that may be outlined as follows:

(a) That since the act of 1895 was a special act, applicable by name to the Indian Territory, it had the necessary effect of superseding as to that Territory the existing general statute (§ 2139, Rev. Stat., as amended in 1892) against the introduction and sale of intoxicating liquors in the Indian country.

(b) That § 8 of the act of 1895 was in turn superseded or repealed *in toto* by the act of 1897 and the Enabling Act.

(c) Or else, that the act of 1897, because amendatory only of the general statute against the introduction and sale of intoxicating liquors in the Indian country, had no effect upon the act of 1895, and did not apply to the Indian Territory because that Territory was covered by the act of 1895.

(d) And that whether the acts of 1892 and 1897, or either of them, was in force in Indian Territory prior to the admission of Oklahoma as a State, they were necessarily superseded as to intra-state transactions by the force and effect of that act, upon the same grounds on which this court said in the *Webb Case* that the act of 1895 was superseded.

Section 2139, Rev. Stat., providing for the punishment of persons introducing liquor into the Indian country, traces its origin to § 20 of the Indian Intercourse Act of June 30, 1834, c. 161, 4 Stat. 729, 732, as amended by act of March 15, 1864, c. 33, 13 Stat. 29. The amendment of 1892 (set forth in 225 U. S. 671), extended the prohibition to include ale, beer, and intoxicating liquors of any kind, as well as ardent spirits and wine, and added a clause

fixing the venue for complaints, arrests, and trials, including a special provision that complaints for offenses committed in the Indian Territory should be made before the United States Court Commissioner, or Commissioner of the Circuit Court of the United States, residing nearest the place where the offense was committed. The penalty under this act, as under § 2139, Rev. Stat., is imprisonment for not more than two years and fine of not more than three hundred dollars for each offense.

Next in chronological order was the act of March 1, 1895, c. 145, 28 Stat. 693, the title of which is—"An act to provide for the appointment of additional judges of the United States Court in the Indian Territory, and for other purposes." Section 8 (set forth in 225 U. S. 672) provides (*inter alia*) that any person carrying into the Territory any vinous, malt or fermented liquors or other intoxicating drinks, shall upon conviction be punished by fine not exceeding five hundred dollars and by imprisonment for not less than one month nor more than five years. Other sections have to do with the creation of judicial districts in the Territory, the establishment of courts, the appointment of judges, attorneys, marshals, clerks, &c. Section 4 adopts the criminal law provisions of Mansfield's Digest of General Laws of Arkansas, with certain reservations. And § 13 declares—"That none of the provisions of any other acts, or of any of the laws of the United States, or of the State of Arkansas, heretofore put in force in said Indian Territory, except so far as they come in conflict with the provisions of this act, are intended to be repealed, or in any manner affected by this act, but all such acts and laws are to remain in full force and effect in said Territory."

The act of January 30, 1897, c. 109, 29 Stat. 506, while having an independent title,—"An act to prohibit the sale of intoxicating drinks to Indians, providing penalties therefor, and for other purposes,"—was manifestly intended primarily as an amendment of the act of 1892.

This appears from a comparison of the clauses defining the acts prohibited, from the circumstance that the act of 1897 contains no provisions of its own prescribing the venue for complaints, arrests, and trials, and especially from the provision of its second section, "That so much of the act of the twenty-third day of July 1892, as is inconsistent with the provisions of this act is hereby repealed." The prohibition is made to apply to sales of intoxicants "to any Indian to whom allotment of land has been made while the title to the same shall be held in trust by the Government, or to any Indian, a ward of the Government, under charge of any Indian superintendent or agent, or any Indian, including mixed bloods, over whom the Government, through its departments, exercises guardianship," and the familiar prohibition of the introduction of intoxicants "into the Indian country" is repeated, with the addition of the following new clause: "which term shall include any Indian allotment while the title to the same shall be held in trust by the Government, or while the same shall remain inalienable by the allottee without the consent of the United States." And the act provides that any person violating its provisions "shall be punished by imprisonment for not less than sixty days, and by a fine of not less than one hundred dollars for the first offense, and not less than two hundred dollars for each offense thereafter."

The act of 1895, although evidently *in pari materia*, is not mentioned in the act of 1897. This circumstance, coupled with the fact that the latter act contains an express repealing clause, is, we think, negatively significant upon the question of implied repeal. In our opinion the act of 1897 was not intended to take the place of § 8 of the act of 1895 after the manner of a revision, and there is no such complete repugnance as to render it clear that that section was intended to be repealed *in toto*.

It is contended that, while the act of 1892 covered the

subject of the introduction and sale of intoxicating liquors in Indian country, and was applicable to the Indian Territory because it was Indian country, the passage by Congress of the act of 1895, a special act applicable to the Territory by name, and covering, by its eighth section, the general subject of the introduction and sale of intoxicating liquors therein, necessarily superseded the former act, so far as the Territory was concerned.

To show the purpose that Congress had in mind in passing this act of 1895, the argument is that prior to the general allotment act of February 8, 1887, 24 Stat. 388, c. 119, all Indian lands were held in common by the Indian tribes; that soon thereafter it came to be questioned whether § 2139, Rev. Stat., as amended by the 1892 act, would apply to an Indian allottee and his allotment under the 1887 act, for the reason that upon allotment thereunder the individual Indian became a citizen of the United States, and his allotment ceased to be Indian country under the accepted definition (*Bates* v. *Clark*, 95 U. S. 204; *Ex parte Crow Dog*, 109 U. S. 556); because of the Indian title having been extinguished; that beginning with the act of March 3, 1893, 27 Stat. 645, 646, c. 209, Congress began to contemplate the allotment in severalty of all lands within the Indian Territory and to look forward to the ultimate creation of a new State out of that Territory; that it was supposed that the effect of allotment would be the same as under the 1887 act, in that the lands allotted would cease to be Indian country; and that hence Congress passed § 8 of the 1895 act, in order that the people residing in Indian Territory might not be left without protection against the introduction and sale of intoxicants when the 1892 act should become inoperative because of the extinguishment of the Indian titles. This argument is ingenious, and has much force; but it takes too little account, we think, of § 13 of the act of 1895, above quoted.

Assuming all that is claimed as to the general object that Congress had in view during these years when the Indian Territory was in a transition state, it seems to us safer to rely upon the words of the several acts of 1892, 1895, and 1897 in order to determine the true intent and meaning of the law-maker. If Congress, in enacting the eighth section of the act of 1895, had intended to totally supersede the act of 1892 as to the Indian Territory, that purpose would naturally have been expressed in plain terms. And so would the act of 1897 presumably have expressed the purpose to supersede and repeal that section, if such purpose had existed. The very fact that Congress contemplated that the situation in Indian Territory was but temporary; that either because of Statehood, or because of the allotment of the Indian lands in severalty, the necessity for retaining these prohibitory laws upon the statute-book would not long continue; tends to negative a desire on the part of Congress to presently repeal either of them; and therefore rebuts the presumption of an implied repeal of one act by the other.

It seems to us, upon the whole, that during this transition period preceding the admission of Oklahoma as a State, the several acts referred to were intended to and did stand together, excepting so far (if at all) as they were necessarily repugnant one to the other; that is to say, the act of 1892, as amended in 1897, on the one hand, making "Indian country" (a term defined in *Bates* v. *Clark*, 95 U. S. 204; *Clairmont* v. *United States,* 225 U. S. 551, 558, and cases cited) the test of the prohibition respecting the introduction of intoxicants; and the act of 1895, on the other hand, employing the territorial test, irrespective of whether it was or continued to be Indian country.

We thus come to consider the effect of the Enabling Act of June 16, 1906, c. 3335, 34 Stat. 267, and the admission of Oklahoma as a State thereunder, which occurred November 16, 1907.

The pertinent clauses of the act may be found in 225 U. S. 677; the clause respecting liquor prohibition being especially important. We should also note the proviso in the first section, that nothing in the state constitution should "be construed to limit or impair the rights of person or property pertaining to the Indians of said Territories (so long as such rights shall remain unextinguished) or to limit or affect the authority of the Government of the United States to make any law or regulation respecting such Indians, their lands, property, or other rights by treaties, agreements, law, or otherwise, which it would have been competent to make if this Act had never been passed." And also this clause from the 21st section: "All laws in force in the Territory of Oklahoma at the time of the admission of said State into the Union shall be in force throughout said State, except as modified or changed by this act or by the constitution of the State, and the laws of the United States not locally inapplicable shall have the same force and effect within said State as elsewhere within the United States."

It is suggested, rather than argued, that the reservation of "the authority of the Government of the United States to make any law or regulation respecting such Indians, their lands, property, or other rights, by treaties, agreement, law, or otherwise, which it would have been competent to make if this act had never been passed," evidences a purpose *not* to preserve *prior* laws or regulations respecting the Indians. But this is sufficiently answered by what was said in *Ex parte Webb*, 225 U. S. 663, 682, where the view of the court was expressed as follows: "It is contended that this does not preserve the existing laws and regulations respecting the Indians, but rather excludes the inference of their continued force and existence by indicating a purpose on the part of Congress to thereafter enact regulations for the protection of the Indians in Oklahoma if necessity requires. This, we think, is an

inadmissible construction. We deem it unreasonable to suppose that Congress, possessing the constitutional power and recognizing the moral duty to make laws and regulations respecting the Indians, and having already established laws and regulations of this character applicable in the Territory, including some that were established by treaties and agreements, should resolve to wipe them out, and thereby impose upon future Congresses the labor and difficulty of establishing other proper laws and regulations in their stead. In our opinion, the purpose expressed in the proviso to reserve to the Government of the United States the authority to make laws and regulations in the future respecting the Indians is, under the circumstances, evidence tending to negative a purpose to repeal by implication the existing laws and regulations on the subject."

When it is recalled that the new State was made up by combining two Territories theretofore separately existing under different systems of laws, one of them being largely inhabited by Indian tribes, with whom numerous treaties had previously been made, differing from each other in many respects, but each recognizing to some extent the propriety of restricting the liquor traffic, the importance of these clauses in the Enabling Act,—read, as they of course must be read, in connection with the restriction of the manufacture and sale of liquors within those parts of the State known as the Indian Territory and the Osage Indian Reservation for a period of twenty-one years, imposed upon the new State by § 3 of the Act,—is very evident.

In the *Webb Case*, as appears from the opinion, p. 676, the Government conceded that the act of 1895 had been repealed by the Enabling Act and the admission of the State thereunder, saving so far as it prohibited the carrying of intoxicating liquors, etc., from another State into the Territory. The statement to the like effect in the

opinion, p. 681, was made in view of this concession; but we see no reason for recalling it. The language used was: "No doubt the Enabling Act, followed by the adoption of the constitution therein prescribed and the admission of the new State, had the effect of remitting to the state government the enforcement of the prohibition respecting the manufacture, sale, barter, etc., of intoxicating liquors within the State, and respecting commerce in such liquors conducted wholly within the State; and, to the extent that the scheme of prohibition established by the Enabling Act covered the same field that had been covered by the act of 1895, the latter act must be considered as impliedly repealed." But this had reference only to the act of 1895, and not to the act of 1897, it having previously been stated in the opinion (p. 676) that since § 2139, Rev. Stat., and the act of 1897 contained provisions respecting the sale of intoxicating liquors to Indians, and in this and perhaps in other important respects covered ground not covered by the act of 1895, we must not be understood as deciding that those prohibitions were no longer in force within what was the Indian Territory.

But, because the act of 1895 was impliedly repealed with respect to intra-state manufacture and traffic, it does not necessarily follow that the act of 1892, as amended in 1897, was likewise repealed in respect of that traffic, by the Enabling Act and the admission of the State. The one was a territorial prohibition applicable to the Indian Territory because made so by Congress, irrespective of other considerations; while the other act, applicable to Indian country throughout the States and Territories generally, happened to be applicable to the Indian Territory because that was Indian country. But as already pointed out, in passing the Enabling Act, Congress knew that if, and when, and so far as, portions of the Indian Territory ceased to be Indian country, the acts of 1892 and 1897 would cease to apply, irrespective

of Statehood; and on the other hand, must be deemed to have intended that the establishment of Statehood should repeal the act of 1895 with respect to matters wholly intrastate, because-·that act (whatever reasons may have moved Congress to enact it) was, by its terms, applicable to the Territory as a Territory and as a whole, irrespective of whether it was Indian country; and this kind of internal prohibition of the liquor traffic would naturally cease with Statehood, because inconsistent with local self-government and with equality between the States.

The terms of the act of January 30, 1897, show that it was especially designed to provide for the changes consequent upon the adoption of the policy of alloting the Indian lands in severalty. *Hallowell* v. *United States*, 221 U. S. 317. This policy was in progress in the Indian Territory at the time of the passage of the Oklahoma Enabling Act. The history has been so recently rehearsed that it need not be here repeated. *Tiger* v. *Western Investment Co.*, 221 U. S. 286, 300, 302; *Heckman* v. *United States*, 224 U. S. 413, 435; *Mullen* v. *United States*, 224 U. S. 448; *Goat* v. *United States*, 224 U. S. 458; *Deming Investment Co.* v. *United States*, 224 U. S. 471. Every consideration arising out of the Governmental guardianship over the Indians, and control over their lands, indicated that as to them the liquor prohibition should be maintained after Statehood, so far as it was consistent with the control of the State over its internal police. The act of 1892, as amended in 1897, concededly remains in force in other States where there is Indian country or Governmental trusteeship over Indian lands or guardianship over the Indians. *United States* v. *Sutton*, 215 U. S. 291, 295. Such legislation is of undoubted constitutionality. *United States* v. *Kagama*, 118 U. S. 375, 383; *Ex parte Webb, supra*. The prohibition against introducing liquor into the Indian country has been consistently adhered

to for many years, with beneficial results so far as the welfare of the Indians is concerned.

All of these considerations were presumably in the mind of Congress when it passed the Enabling Act, and they are inconsistent with any tacit purpose to repeal the acts of 1892 and 1897. The liquor prohibition, so far as it concerns the Indians, has always been deemed one of the peculiar responsibilities of the Government at Washington, and it may easily be believed that Congress felt reluctant to delegate the subject-matter wholly to the state government that was about to be established in the Indian Territory; especially as the same subject-matter in other States remained, as it still remains, under Federal control.

In *United States Express Company* v. *Friedman*, 191 Fed. Rep. 673, the Circuit Court of Appeals for the Eighth Circuit held that the Enabling Act did not repeal the act of 1897, at least with respect to the introduction of liquor into the Indian country from points outside the State. In *Mosier* v. *United States*, 198 Fed. Rep. 54, the same court held the act of 1897 to be in force within the State so far as relates to the sale of liquors to Indians.

Upon the whole, while the matter is not free from difficulty, it seems to us the better argument is against the implied repeal. It follows that the District Court erred in holding the acts in question, viz: § 2139, Rev. Stat., as amended by the acts of 1892 and 1897, to be no longer in force, and erred in sustaining the demurrer to the indictment. The judgment should be reversed and the cause remanded for further proceedings in accordance with the views above expressed.

*Judgment reversed.*