## LUCAS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. October 4, 1926.)

No. 7362.

**1. Criminal law ⬤⟳901.**

Where defendant introduced evidence after denial of motion for directed verdict at close of government's case, and did not renew motion at close of all evidence, error, if any, in denial of motion, was not reviewable.

**2. Indians ⬤⟳38(4).**

Indictment charging possession of liquor in county which was part of Indian territory before admission of Oklahoma as a state *held* to charge a violation of Act Cong. June 30, 1919 (41 Stat. 4), in view of Act Cong. March 1, 1895 (28 Stat. 693).

**3. Indians ⬤⟳35—Act prohibiting possession of liquor in former Indian country held not invalid (Act Cong. June 30, 1919 [41 Stat. 4]; Const. art. I, § 8).**

Act Cong. June 30, 1919 (41 Stat. 4), prohibiting possession of liquor in territory which before adoption of Oklahoma Enabling Act was Indian territory, *held* not unconstitutional on theory that territory had passed under state police power, in view of Const. art. 1, § 8, and other Indian legislation.

In Error to the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

George Lucas was convicted of unlawfully possessing intoxicating liquor, in violation of Act Cong. June 30, 1919 (41 Stat. 4), and he brings error. Affirmed.

John T. Harley, of Tulsa, Okl., for plaintiff in error.

W. L. Coffey, Asst. U. S. Atty., of Tulsa, Okl. (John M. Goldesberry, U. S. Atty., of Tulsa, Okl., on the brief), for the United States.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

BOOTH, Circuit Judge: By an indictment returned in the Northern district of Oklahoma, plaintiff in error and M. M. Wells were charged with having unlawfully in their possession intoxicating liquor, to wit, whisky, "in an Indian country, to wit, Okfuskee county, state of Oklahoma, where the said liquor was had, possessed, and kept by the said defendants, having been within the limits of the Indian Territory, and a part thereof prior to the admission of the state of Oklahoma into the Union as one of the United States of America, and being then and there a place where the introduction of spirituous and intoxicating liquor is and was prohibited by the federal statutes, and which said possession of said liquor was contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America." Wells pleaded guilty. Lucas was tried and found guilty. He sued out this writ of error.

The assignments of error bring to the attention of the court two matters: (1) An alleged error of the trial court in denying a motion for a directed verdict at the close of the government's case; (2) the constitutionality of the Act of Congress of June 30, 1919 (41 Stat. 4).

[1] As to the first, it is sufficient to say that testimony was introduced by the defendant after the denial of the motion for a directed verdict at the close of the government's case. The alleged error was thereby waived. Youngblood v. United States, 266 F. 795 (C. C. A. 8); Marron v. United States (C. C. A.) 8 F.(2d) 251, 258. The motion was not renewed at the close of all the evidence, and the facts and circumstances of the case are not of such character as to impel us to review the evidence in the absence of a proper assignment of error.

[2] Turning to the second matter; the Act of June 30, 1919, under which the indictment was drawn, reads as follows:

"For the suppression of the traffic in intoxicating liquors among Indians, $100,000:

[Provided, that on and after July 1, 1919, possession by a person of intoxicating liquors in the Indian country or where the introduction is or was prohibited by treaty or federal statute shall be an offense and punished in accordance with the provisions of the Acts of July 23, 1892 (Twenty-Seventh Statutes at Large, page 260), and January 30, 1897 (Twenty-Ninth Statutes at Large, page 506):] Provided further, that the provisions of article IX of the agreement with the Nez Perce Indians of Idaho, dated May 1, 1893, and ratified and confirmed by the Act of Congress approved- August 15, 1894 (Twenty-Eighth Statutes at Large, pages 286–330), prohibiting the sale of intoxicating liquors to those Indians or its introduction upon their lands, are hereby extended for the period of ten years."

The statute prohibits possession of intoxicating liquor in two classes of places: (1) Indian country; (2) places where the introduction of such liquor was or is prohibited by treaty or federal statute. It is not claimed by the government that the place of possession in the instant case (Okfuskee county, Okl.) was at the time of the offense within the first class, but it is claimed that it was within the second class.

It is conceded that Okfuskee county was a part of the Indian Territory prior to the admission of Oklahoma as a state. The Act of March 1, 1895 (28 Stat. c. 145, p. 693), prohibited the introduction of intoxicating liquor into Indian Territory. Section 8 of the act read as follows:

"That any person, whether an Indian or otherwise, who shall, in said territory, manufacture, sell, give away, or in any manner, or by any means furnish to anyone either for himself or another, any vinous, malt, or fermented liquors, or any other intoxicating drinks of any kind whatsoever, whether medicated or not, or who shall carry, or in any manner have carried, into said territory any such liquors or drinks, or who shall be interested in such manufacture, sale, giving away, furnishing to anyone, or carrying into said territory any of such liquors or drinks, shall, upon conviction thereof, be punished by fine not exceeding five hundred dollars and by imprisonment for not less than one month nor more than five years."

After the admission of Oklahoma as a state, the Act of March 1, 1895, remained in force, at least in part. Ex parte Webb, 225 U. S. 663, 32 S. Ct. 769, 56 L. Ed. 1248. The court in its opinion in that case said (page 682, 32 S. Ct. 776 [56 L. Ed. 1248]):

"* * * It seems to us that Congress, so far from intending by the Enabling Act to repeal so much of the act of 1895 as prohibits the carrying of intoxicating liquors into the Indian Territory from points without the state, framed the Enabling Act with a clear view of the distinction between the powers appropriate to be exercised by the new state over matters within her borders, and the powers appropriate to be exercised by the United States over traffic originating beyond the borders of the new state and extending within the Indian Territory."

The court further said (page 691, 32 S. Ct. 779 [56 L. Ed. 1248]):

"The power of Congress to regulate commerce between the states, and with Indian tribes situate within the limits of a state, justifies Congress when creating a new state out of territory inhabited by Indian tribes, and into which territory the introduction of intoxicating liquors is by existing laws and treaties prohibited, in so legislating as to preserve those laws and treaties in force to the extent of excluding interstate traffic in intoxicating liquors that would be inconsistent with the prohibition."

From the foregoing it is clear that the offense in the instant case was committed in a place where the introduction of intoxicating liquor was prohibited by federal statute, to wit, by section 8 of the Act of March 1, 1895 (28 Stat. 693). It follows that the offense was within the Act of June 30, 1919.

[3] The only remaining question is whether the last-mentioned act is constitutional. The act is entitled "An act making appropriations for the current and contingent expenses of the Bureau of Indian Affairs, for fulfilling treaty stipulations with various Indian tribes, and for other purposes, for the fiscal year ending June 30, 1920." It contains many provisions. The provision here in question (quoted above, inclosed in brackets) is found in section 1 under the subheading, "Suppressing Liquor Traffic."

It is conceded by plaintiff in error that the place of the offense, Okfuskee county, was formerly Indian country. It is well settled, and this is also conceded by plaintiff in error, that Congress has authority to legislate relative to the introduction of liquor into Indian country; that Congress has the right to reserve that authority when it creates a state out of Indian country; or that Congress can by a treaty with the Indians, which cedes a portion of Indian country for the formation of a state, make a reservation in such treaty that intoxicating liquor shall not be in-

troduced into such country, even after it has ceased to be Indian country; and that Congress may, when necessary to the proper exercise of its power in respect to the guardianship of Indians, reimpose the status of Indian country upon lands which have once had but have lost that status. See Browning v. United States, 6 F.(2d) 801 (C. C. A. 8), where the cases are reviewed.

But it is contended that, inasmuch as the locus in quo, though formerly Indian country, had ceased to be such before the passage of the Act of June 30, 1919, inasmuch as no reservation of the requisite authority was made by Congress in the Oklahoma Enabling Act, and inasmuch as no Indian treaty was in effect June 30, 1919, which contained such a restriction affecting this locus, the passage of that act was beyond the power of Congress; in other words, that the state of Oklahoma was vested by the Enabling Act with all intrastate police powers, "except those constitutionally inherent in the federal government, * * * namely, the control of commerce with restricted Indians and the control over restricted Indian lands, that is, Indian country," and that the Act of June 30, 1919, so far as the clause now under discussion is concerned, did not relate either to restricted Indians or to Indian country, and was therefore invalid as invading the police power of the state of Oklahoma.

These contentions cannot in our opinion be sustained. A somewhat similar claim was made in the Browning Case, which involved the validity of that portion of section 17 of the Act of Congress of March 2, 1917 (39 Stat. 969 [Comp. St. § 4137a]), which reads as follows:

"That all of Osage county, Oklahoma, shall hereafter be deemed to be Indian country within the meaning of the acts of Congress making it unlawful to introduce intoxicating liquors into the Indian country."

It was contended that the locus of the offense, though within Osage county, had long prior to the passage of the Act of March 2, 1917, ceased to be Indian country, and had passed under the police power of the state, and that Congress was not authorized to reimpose the status of Indian country on lands which had once lost that status. This court upheld the validity of the Act of March 2, 1917, saying:

"Under section 8, article 1, of the Constitution of the United States, the power to regulate commerce with the Indian tribes is vested in Congress. This power has been most liberally construed. It is a continuing power

and cannot be abdicated. It covers traffic or intercourse, not only with Indian tribes, but also with a member of such tribe, although within the limits of a state. U. S. v. Holliday, 3 Wall. 407, 418, 18 L. Ed. 182; U. S. v. 43 Gallons of Whiskey, supra [93 U. S. 188, 23 L. Ed. 846]; Dick v. U. S., supra [208 U. S. 340, 28 S. Ct. 399, 52 L. Ed. 520]; Ex parte Webb, 225 U. S. 663, 683, 32 S. Ct. 769, 56 L. Ed. 1248."

The court further said:

"This power is not terminated by the mere facts that allotments of land have been made to the Indians and citizenship conferred upon them. Hallowell v. U. S., 221 U. S. 317, 31 S. Ct. 587, 55 L. Ed. 750; Tiger v. Western Inv. Co., 221 U. S. 286, 31 S. Ct. 578, 55 L. Ed. 738. In determining the validity of the exercise of such power the circumstances surrounding the exercise should be considered."

In considering the case at bar it must be borne in mind that, at the time when the act of Congress here in question was passed, June 30, 1919, the allotments of land for the Creek Tribe of Indians, some members of which were still inhabiting Okfuskee and adjoining counties, had not been entirely completed. Many Indians of that tribe, residing in those counties, were then and still are wards of the government. This is apparent from the legislation of Congress: Act of February 14, 1920 (41 Stat. 408, 427, 428); Act of March 3, 1921 (41 Stat. 1225, 1242, 1243); Act of May 24, 1922 (42 Stat. 552, 575, 576); Act of January 24, 1923 (42 Stat. 1174, 1196, 1197); Act of June 5, 1924 (43 Stat. 390, 398, 407); Act of March 3, 1925 (43 Stat. 1141, 1148, 1158); Act of May 24, 1924 (43 Stat. 139).

That Congress had full power over commerce with these wards of the government, including the power to prohibit the sale or gift to them of intoxicating liquor is beyond question. Furthermore, as was said in the Browning Case:

"In addition, Congress also had power, under the last clause of section 8, article 1, of the Constitution of the United States 'to make all laws which shall be necessary and proper in carrying into execution the foregoing powers.' Doubtless in the judgment of Congress the prohibition of possession of intoxicating liquor in the whole of Osage county was necessary and proper, in order effectively to prevent traffic in such article with the Indians therein residing, and while under the care of the government. We cannot say that such conclusion by Congress was not jus-

tified by the situation. The oft-quoted words of Chief Justice Marshall are apposite: 'Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional.' McCulloch v. Md., 4 Wheat. 316, 421 (4 L. Ed. 579)."

What was there said in reference to Osage county and the Act of March 2, 1917, applies equally to Okfuskee and adjoining counties as affected by the Act of June 30, 1919. That act was merely one of the means adopted by Congress to effectively prevent traffic in intoxicating liquor with the Indians while they remain wards of the government.

It is argued that such a construction cannot reasonably be given to the Act of June 30, 1919, because of the scope of the words "or where the introduction is or was prohibited by treaty or federal statute." It is said that this prohibition of the statute would be applicable to about 20 states, and that such a result could not have been intended by Congress. It may be noted in passing that the provision relating to the Nez Perce Indians in the Act of June 30, 1919, above quoted, would seem to indicate that the scope of the words "where the introduction is or was prohibited by treaty or federal statute" was not understood by Congress to be so broad as counsel contends; otherwise, the provision was unnecessary.

We are not vitally concerned, however, in the case at bar, with the possible scope of the act, nor with any locus except the one where the offense was committed. As applied to that locus, we think the Act of June 30, 1919, was valid and constitutional, and that the case at bar is ruled in principle by Browning v. United States, supra. See, also, U. S. Express Co. v. Friedman, 191 F. 673 (C. C. A. 8), 112 C. C. A. 219; Edwards v. United States, 5 F.(2d) 17 (C. C. A. 8).

The case of United States v. Wright, 229 U. S. 226, 33 S. Ct. 630, 57 L. Ed. 1160, is not opposed to the foregoing conclusion. That case merely declared the effect of the Oklahoma Enabling Act upon certain statutes relating to the sale of intoxicating liquor to Indians, and to the introduction of such liquor into Indian country. Neither in that case nor in the Webb Case, supra, did the decision of the court question the power of Congress to pass such statutes as the Act of March 2, 1917, and the Act of June 30, 1919.

Judgment affirmed.