## UNITED STATES v. COLLINS.

(District Court, W. D. Louisiana, Shreveport Division. January 20, 1919.)

### No. 2524.

1. INTOXICATING LIQUORS ☞138—REED AMENDMENT—"OR."

Reed amendment to postal appropriation made by Act March 3, 1917 (Comp. St. 1918, § 8739a), making it offense to order, purchase, or cause intoxicating liquors to be transported in interstate commerce into any state whose laws prohibit their manufacture or sale, applies if either manufacture or sale is prohibited; conjunctive construction of "or" not being permissible.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Or.]

2. COURTS ☞366(27)—FOLLOWING STATE DECISIONS—REED AMENDMENT.

Transportation of intoxicating liquors into Texas, which has prohibited their manufacture for beverage purposes, is violation of Reed amendment of postal appropriation made by Act March 3, 1917 (Comp. St. 1918, § 8739a), though there is some ground to believe court of last resort in Texas will hold state prohibitory law unconstitutional, as the federal court will not anticipate and be guided by what the state court might thereafter hold.

3. INTOXICATING LIQUORS ☞138—REED AMENDMENT—NECESSITY FOR STATE-WIDE PROHIBITORY ACT.

Condition of Reed amendment to postal appropriation made by Act March 3, 1917 (Comp. St. 1918, § 8739a), prohibiting transportation of intoxicating liquors in interstate commerce into any state whose laws prohibit manufacture or sale, is that state shall have prohibited manufacture or sale within entire territory, not merely in parts under local option.

4. INTOXICATING LIQUORS ☞138—REED AMENDMENT—TRANSPORTATION "INTO" DRY STATE.

Reed amendment to postal appropriation made by Act March 3, 1917 (Comp. St. 1918, § 8739a), is not violated unless there is actual transportation of intoxicating liquors from point without to point within state, which has prohibited their manufacture or sale; "into," as used, conveying idea of entrance, passage, or motion.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Into.]

Gould Collins was charged with violation of the Reed amendment, and he moves to quash the indictment. Demurrer sustained.

Joseph Moore, U. S. Atty., and J. H. Jackson, Asst. U. S. Atty., both of Shreveport, La.

J. S. Atkinson and J. M. Grimmet, both of Shreveport, La., for defendant.

JACK, District Judge. The defendant in count 1 of the indictment stands charged with violation of that part of the postal appropriation act of March 3, 1917 (39 Stat. 1069, c. 162 [Comp. St. 1918, § 8739a]), known as the "Reed Amendment," which is as follows:

"Whoever shall order, purchase, or cause intoxicating liquors to be transported in interstate commerce, except for scientific, sacramental, medicinal, and mechanical purposes, into any state or territory, the laws of which state or territory prohibit the manufacture or sale therein of intoxicating liquors

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

for beverage purposes, shall be punished as aforesaid: Provided, that nothing herein, shall authorize the shipment of liquor into any state contrary to the laws of such state"

—in that he did, in the parish of Caddo,

"unlawfully, knowingly and willfully, and with intent to transport the intoxicating liquors hereinafter described, from the said parish of Caddo, state of Louisiana, to Texarkana, in the state of Texas, the said state then and there being a state wherein the manufacture of intoxicating liquors for beverage purposes was prohibited by law, order, purchase, and cause to be transported in interstate commerce, a certain shipment of intoxicating liquor, to wit, ten cases of whisky; that is to say, did order, purchase, and cause the said intoxicating liquor to be transported in interstate commerce, from the city of Monroe, Louisiana, and into the parish of Caddo, Louisiana, and with said state of Texas as the destination of said transportation, by transporting the same in an automobile from the said city of Monroe, Louisiana, to the parish of Caddo, and which said intoxicating liquor was not then and there being transported for sacramental, scientific, medicinal, or mechanical purposes, contrary to the form of the statute," etc.

In count 2 of the indictment the same offense at the same time and place is charged, the only difference being that in this count the intended destination of the liquors transported was the county of Bowie, which county was a county wherein, under the local option law of Texas, the sale of intoxicating liquors was prohibited.

The second count is based on the assumption that, even though the state of Texas has not legally adopted state-wide prohibition, the Reed amendment is applicable to an interstate shipment of intoxicating liquors into a "dry" county of that state.

The defendant has moved to quash the indictment. It is contended that the Reed amendment is applicable only to those states where both the sale and the manufacture of intoxicating liquors is prohibited throughout the state, and that under a recent decision of the Texas Court of Criminal Appeals (Ex parte Myer, 207 S. W. 100, not yet officially reported), that section of the state-wide prohibition law of Texas prohibiting the sale of intoxicating liquors has been declared unconstitutional. The section prohibiting the manufacture of such liquors was not at issue and so was not passed on.

[1] As will be noted by reference to the Reed amendment previously quoted, it is applicable to any state the laws of which prohibit "the manufacture or sale therein of intoxicating liquors for beverage purposes." Thus it is sufficient if either the manufacture or the sale is prohibited. The attention of the court is called to a line of decisions in which the disjunctive "or" is sometimes construed as "and," but I do not think such a construction applicable in this case. Congress had the authority to prohibit the shipment of intoxicating liquors into states which prohibit the manufacture of liquors, or which prohibit the sale of liquors, either one or the other, or both, and there is no good reason to conclude that Congress did not intend exactly what it said.

It is further argued, however, that under the recent Texas statute, not only is the manufacture and sale of intoxicating liquors prohibited, but likewise their importation from another state, and that if the Legislature of Texas, as held by the Court of Criminal Appeals of that

state, was without authority to prohibit the sale of intoxicating liquors, it could not do so indirectly by prohibiting their manufacture in the state and their importation from without the state, as this would necessarily make the sale impossible after the limited supply on hand was exhausted; consequently, that while the Court of Criminal Appeals had before it only the question of the sale of intoxicating liquors, it would necessarily follow that the remainder of the law was likewise unconstitutional and that that court, to be consistent, would have to so hold whenever the question was brought up.

[2] While this court will accept the ruling of the highest state court of criminal jurisdiction as to the constitutionality of a statute of that state, even though it may itself entertain a contrary view, it will not anticipate and be guided by what that court might hereafter hold. The state law, as it now stands, prohibits the manufacture of intoxicating liquors in Texas for beverage purposes, and thus brings transportation of such liquors within the Reed amendment. In the recent case of United States v. Dan Hill, 248 U. S. 420, 39 Sup. Ct. 143, 63 L. Ed. ——, the Supreme Court of the United States held the Reed amendment applicable to liquors intended for personal use, although under the state law they might be shipped in. Thus the purpose of the Reed amendment is not merely to assist the various states in enforcing prohibition to the limited extent provided by their statutes. It is a law unto itself, passed under the authority of Congress to regulate interstate commerce, and its applicability to intoxicating liquors shipped into a state for beverage purposes is conditioned only on that state's having prohibited the manufacture or having prohibited the sale of such liquors for beverage purposes.

[3] This condition, however, that the state shall have prohibited the manufacture or sale of liquors clearly means such prohibition within the entire state. This is made plain by the provision in the act immediately preceding the Reed amendment which forbids the mailing of any letter or newspaper containing advertisements of intoxicating liquors addressed to—

"any place or point in any state or territory of the United States, at which it is, by the law in force in the state or territory at that time, unlawful to advertise or solicit orders for said liquors."

Congress was careful to make this inhibition applicable, not only to advertisements mailed to any point in a state in which state-wide prohibition prevails, but also to such advertisements mailed to any point in the state at which point the sale of such liquors is prohibited. If in the Reed amendment, immediately following, it had been intended to make it likewise applicable to "dry" sections of a "wet" state, it would, as in the preceding section, have been so specifically provided. In the case of McAdams v. Wells Fargo Express Co. (D. C.) 249 Fed. 175, cited by counsel as holding the contrary, the sole issue presented appears to have been whether the act was applicable to liquors shipped for personal use and not for sale. No contention was made, as in the case at bar, that the Reed amendment did not apply to intoxicating liquors shipped into prohibition territory of a

local option state. In the case of State ex rel. Brewing Co. v. Quincy, etc., Railway Co. (Mo. App.) 204 S. W. 584, the expressions of the court relative to the Reed amendment were obiter dicta.

[4] While the indictment, following the language of the statute, charges that the defendant ordered, purchased, and caused to be transported the liquor in question, the closing part of the indictment particularly describing the offense restricts it to the charge that defendant caused the transportation of the liquor from Monroe, La., to Shreveport, with the intent of continuing the transportation into the state of Texas. It is finally urged in the demurrer that, if the Reed amendment is applicable to Texas, it is necessary that the intoxicating liquors should have been actually transported into that state, as the transportation in interstate commerce forbidden by the act is—

"into any state or territory, the laws of which state or territory prohibit the manufacture or sale therein of intoxicating liquors for beverage purposes."

The case of United States v. Chavez, 228 U. S. 525, 33 Sup. Ct. 595, 57 L. Ed. 950, is relied on by counsel for the government in support of the contention that it was not necessary that the liquors transported with Texas as their destination should have actually crossed the border and been taken into that state. In the Chavez Case the defendant was indicted under a statute, the first section of which provides that, whenever the President shall find that in any American country domestic violence exists which would be promoted by the use of arms or munitions of war procured from the United States, and shall make proclamation thereof, it shall be unlawful to export, except under certain limitations, any arms or munitions of war from any place in the United States to such country. The second section provides that "any shipment of material hereby declared unlawful shall be punishable," etc. The defendant, charged with violation of the statute, while carrying Winchester cartridges from the city of El Paso to Mexico, was arrested before he crossed the border. The court held that, while the term "export" technically means the shipment from this country and the entry into another, yet in common speech the shipment of goods from this to a foreign country, without regard to their landing in such country, is often spoken of as an export, and that Congress used the word in this sense. This the court thought was made clear by the second section of the act, which it held does not purport to punish the act of exporting, but in express terms "only punishes any shipment." The contrary construction of the act would have made it wholly inoperative in such cases, as, after a party intending to violate the law actually crossed into Mexico with the forbidden munitions of war, he would be beyond the jurisdiction of the court. Such, however, fortunately is not the case with prosecutions under the Reed amendment. Had the defendant, Collins, completed his journey into Texas with the prohibited liquors, he might still have been prosecuted in a United States court in that state.

Webster defines "into" as meaning:

"To the inside of; within; expressing entrance, or a passage from the outside of a thing to its interior parts; following verbs expressing motion, as 'come into the house,' 'go into the church,' etc."

The language of the act is plain and unambiguous, and it must be read and enforced as it is written. The transportation must be "into" a state, "the laws of which prohibit the manufacture or sale of intoxicating liquors for beverage purposes." There must be a transportation from a point without the state to a point within the state.

As the indictment does not charge that the intoxicating liquors were transported from Louisiana into the state of Texas, but only that they were transported from Monroe, La., to Shreveport, with intent to continue the transportation on into the state of Texas, the facts alleged do not constitute an offense under the statute, and the demurrer is sustained.