COLLINS v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. March 18, 1920.)

No. 3470.

INTOXICATING LIQUORS ⊂⊃138—PURCHASE WITH INTENT TO TRANSPORT NOT IN-
TERSTATE TRANSACTION.

A purchase of liquor in a state where the purchase is lawful is not
converted into an interstate transaction, which Congress has power to
deal with under the commerce clause of the Constitution, because the
purchaser intended to transport the liquor into another state, and will not
sustain an indictment for violation of Reed Amendment March 3, 1917
(Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a).

In Error to the District Court of the United States for the West-
ern District of Louisiana; George W. Jack, Judge.

Criminal prosecution by the United States against Gould Collins.
Judgment of conviction, and defendant brings error. Reversed.

J. S. Atkinson and Judson M. Grimmet, both of Shreveport, La.,
for plaintiff in error.

Joseph Moore, U. S. Atty., of Shreveport, La.

Before WALKER, Circuit Judge, and GRUBB and CALL, Dis-
trict Judges.

GRUBB, District Judge. The plaintiff in error was convicted of
a violation of the act of Congress, commonly known as the Reed
Amendment of the Postal Appropriation Act of March 3, 1917
(Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a). The indict-
ment contained but one count, and it charged that the plaintiff in
error and another—

"did unlawfully order and purchase a certain quantity of intoxicating liquors,
to wit, ten cases of whisky, contained in pint and quart bottles, to be trans-
ported in interstate commerce from Monroe, in the state of Louisiana, into
the state of Texas, in which said state of Texas the laws thereof then and
there prohibited the manufacture of intoxicating liquors for beverage pur-
poses, and which liquor was not intended for sacramental, scientific, medicinal,
or mechanical purposes."

The case was tried on an agreed statement of facts. It recited
that on the 20th day of October, 1918, the defendant ordered, pur-
chased, and received from J. Y. Covington, in a licensed saloon
in Monroe, La., the liquor described in the indictment; that its
sale was authorized by the laws of Louisiana; that defendant, at
the time he bought it, intended to transport it from Monroe, La.,
into Texas, for beverage purposes; that the manufacture of intoxi-
cating liquor for beverage purposes was prohibited by statute in
Texas; that after receiving said liquor in Monroe, La., defendant
placed the liquor in his automobile and started with it to Texas, but
was arrested at Shreveport, before getting beyond the borders of
Louisiana.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The question involved in the appeal is whether such an order or purchase was an order and purchase in interstate commerce, such as is prohibited by the Reed Amendment. If Congress had the right, under the interstate commerce clause of the Constitution (article 1, § 8), to prohibit such an order or purchase, we would construe the language of the Reed Amendment as including such an order or purchase. On the other hand, if it was beyond the competency of Congress to deal with such an order or purchase, because it does not constitute an interstate transaction, then it would be our duty to construe the Reed Amendment as not embracing it. The language of the act would still have a subject-matter on which to operate. Intoxicating liquor ordered or purchased by one in Texas from one in Louisiana, to be shipped from Louisiana to Texas, and intoxicating liquor, ordered or purchased, as was that in this case, but with a term in the contract of purchase that the seller was to ship the liquor into Texas for the buyer, would be covered by the language of the act, and would be within the undoubted competency of Congress to deal with or prohibit.

Does the intent of the purchaser, undisclosed to the seller, at the time the purchase of the liquor is made, to transport it in interstate commerce to another state, where its manufacture is prohibited, constitute the transaction evidenced by the order or purchase an interstate one? And if not, does the subsequent attempt to transport the liquor, so purchased, to a forbidden state, make it such? Whatever might have been our opinion, if the question had not been foreclosed in principle by the decisions of the Supreme Court, we think it has been so foreclosed.

In the case of Coe v. Errol, 116 U. S. 517, 527, 6 Sup. Ct. 475, 478 (29 L. Ed. 715), the Supreme Court held that—

"Goods do not cease to be part of the general mass of property in the state, subject, as such, to its jurisdiction and taxation in the usual way, until they have been shipped, or entered with a common carrier for transportation to another state, or have been started upon such transportation in a continuous route or journey."

The court also gave a negative answer to this self-propounded question:

"Does the owner's state of mind in relation to the goods—that is, his intent to export them, and his partial preparation to do so—exempt them from [state] taxation?"

The court further said:

"It seems to us untenable to hold that a crop or a herd is exempt from taxation merely because it is, by its owner, intended for exportation. If such were the rule, in many states there would be nothing but the lands and real estate to bear the taxes. Some of the Western States produce very little except wheat and corn, most of which is intended for export; and so of cotton in the Southern States. Certainly, as long as these products are on the lands which produce them, they are part of the general property of the state. And so we think they continue to be until they have entered upon their final journey for leaving the state and going into another state."

The court further said that—

"The carrying of them in carts or other vehicles, or even floating them, to the depot where the journey is to commence, is no part of their journey. That is all preliminary work, performed for the purpose of putting the property in a state of preparation and readiness for transportation."

The court further held that the preliminary journey was no part of the exportation, and that state control did not pass until the final journey to the other state had commenced.

In the case of Kidd v. Pearson, 128 U. S. 1, 24, 9 Sup. Ct. 6, 11 (32 L. Ed. 346), the Supreme Court said:

"The manufacturing of intoxicating liquors in a state is none the less a business within that state because the manufacturer intends, at his convenience, to export such liquors to foreign countries or to other states. This court has already decided that the fact that an article was manufactured for export to another state does not of itself make it an article of interstate commerce within the meaning of section 8, art. 1, of the Constitution, and that the intent of the manufacturer does not determine the time when the article or product passes from the control of the state and belongs to commerce" (referring to the case of Coe v. Errol, supra).

The court, in the case of Kidd v. Pearson, also declined to distinguish between the taxing and the police power of the state in this respect, concluding its opinion with this statement:

"The police power of a state is as broad and plenary as its taxing power, and property within the state is subject to the operations of the former so long as it is within the regulating restrictions of the latter."

In the case of Hammer v. Dagenhart, 247 U. S. 251, 272, 38 Sup. Ct. 529, 531 (62 L. Ed. 1101, 3 L. R. A. 649, Ann. Cas. 1918E, 724), the Supreme Court said:

"When offered for shipment, and before transportation begins, the labor of their production is over, and the mere fact that they were intended for interstate commerce transportation does not make their production subject to federal control under the commerce power"—citing Coe v. Errol, 116 U. S. 517, 6 Sup. Ct. 475, 29 L. Ed. 715; Kidd v. Pearson, 128 U. S. 1, 9 Sup. Ct. 6, 32 L. Ed. 346; U. S. v. Knight Co., 156 U. S. 1, 15 Sup. Ct. 249, 39 L. Ed. 325; Bacon v. Illinois, 227 U. S. 504, 33 Sup. Ct. 299, 57 L. Ed. 615; D., L. & W. R. R. Co. v. Yurkonis, 238 U. S. 439, 35 Sup. Ct. 902, 59 L. Ed. 1397.

These cases definitely settle the rule that neither the intent of the producer, nor preparatory steps taken by him, to introduce the goods produced into interstate or foreign commerce, serves to take away the control of the state under its taxing or police power over the goods produced. The same rule must apply to the disposition of goods as well as to their production, unless the transaction by which they are disposed of has itself an interstate character. In this case, apart from the undisclosed intent of the defendant, the transaction by which he acquired the liquor was like any other domestic sale. If, as has been settled by the Supreme Court in the cases cited, this undisclosed intent is insufficient to give character to the transaction as one in interstate commerce, then it can have no such character. It is also well settled that the liquor itself did not enter into interstate commerce until it began its transportation from Monroe to Texas, which it had not done at the time of the purchase. The sale

was authorized by the law of Louisiana, and the Legislature of that state had the power to legalize it, as it had the undoubted authority to permit or forbid domestic sales of intoxicating liquors within its borders.

Neither the intent of the purchaser, nor any preparatory steps taken to transport the liquor to Texas, before its journey thence began, availed to take away the domestic character of the transaction. The subsequent movement of liquor from Monroe to Shreveport by the defendant could only serve to illustrate his undisclosed intent when he bought the liquor, and this intent was insufficient to make the order or purchase an interstate transaction. As there was no evidence that the intent of the defendant to take the liquor to Texas was in any way made known to or acquiesced in by the seller, we are not called upon to determine whether or not a purchase under such circumstances would be an interstate transaction. The order and purchase not being within the competency of Congress to punish, and the defendant having been charged in the indictment with ordering and purchasing, and not with having caused to be transported in interstate commerce and into a state which prohibited the manufacture of liquor, the liquor described in the indictment, a verdict of acquittal should have been directed.

The defendant had already been acquitted, by direction of the court, under a prior indictment, of the offense of having caused the same liquor to be transported in interstate commerce; the District Judge being of the opinion that offense was not complete until the liquor had reached Texas. United States v. Collins (D. C.) 254 Fed. 869. In the case of U. S. v. Chavez, 228 U. S. 525, 33 Sup. Ct. 595, 57 L. Ed. 950, the Supreme Court, though it held the technical meaning of the word "export" to include the landing in the foreign country, as well as the shipment from the country of origin, declined to give the word "export" its technical meaning as used by Congress in the joint resolution of March 14, 1912 (37 Stat. 630), which authorized the President by proclamation to prohibit the exportation of arms and munitions to any American country, where there existed conditions of domestic violence, but held that it included a movement of munitions from one locality in El Paso to another; its journey to Mexico having been interrupted by a seizure before it had left El Paso. By a like liberality of construction, the causing of intoxicating liquor to be transported from one state into another state, where its sale or manufacture is prohibited, would seem to be complete as soon as the interstate journey was entered upon, even though the liquor failed to reach the prohibited territory.

The District Judge was of the opinion that the Chavez Case was to be distinguished from this case. The interstate journey is a unit, and its interstate character would seem to attach from the moment it is entered upon, and it would then become competent for Congress to regulate or prohibit it. The use of the words of the act, "into any state or territory," may well have been to describe the illegal destination of the transportation, and not to prescribe a fact necessary

to complete the offense. The act inhibited is a transportation in interstate commerce, provided such transportation is destined to end in a prohibited territory, and the function of the words "in any state or territory" would seem to be to limit the offense to cases in which the destination is an illegal one, rather than to prescribe that no offense is committed until that destination is reached.

The judgment of conviction is reversed.