## UNITED STATES *v.* HILL.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA.

No. 357.. Argued November 5, 6, 1918.—Decided January 13, 1919.

The transportation of liquor upon the person, and for the personal use, of an interstate passenger, is "interstate commerce." P. 424.

Under the power to regulate interstate commerce, Congress may forbid the interstate transportation of intoxicating liquor without regard to the policy or law of any State. P. 425.

The "Reed Amendment," § 5, Act of March 3, 1917, c. 162, 39 Stat. 1058, 1069, provides: "Whoever shall order, purchase, or cause in-

toxicating liquors to be transported in interstate commerce, except for scientific, sacramental, medicinal, and mechanical purposes, into any State or Territory the laws of which State or Territory prohibit the manufacture or sale therein of intoxicating liquors for beverage purposes shall be punished as aforesaid: *Provided*, That nothing herein shall authorize the shipment of liquor into any State contrary to the laws of such State." Respondent bought intoxicating liquor in Kentucky intending to take it to West Virginia for his personal use as a beverage, and for that purpose carried it upon his person on a trip by common carrier into the latter State, whose laws permitted such importation but forbade manufacture or sale for beverage purposes. *Held:* (1) That the Amendment applied, not being limited to cases of importation for commercial purposes; (2) that, as so construed, it is within the power of Congress under the commerce clause. P. 427.

Reversed.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Frierson*, with whom *Mr. Charles S. Coffey* was on the brief, for the United States.

No appearance for defendant in error.

MR. JUSTICE DAY delivered the opinion of the court.

This is a writ of error bringing in review under the Criminal Appeals Act the judgment of the District Court of the United States for the Southern District of West Virginia sustaining a demurrer and motion to quash an indictment against one Dan Hill. The indictment charged that Hill on the 20th of November, 1917, being in the State of Kentucky, there intended to go and be carried by means of a common carrier, engaged in interstate commerce, from the State of Kentucky into the State of West Virginia, and intended to carry upon his person, as a beverage, for his personal use, a quantity of intoxicating liquor, to-wit: one quart thereof, into the State of West

Virginia, and did in the State of Kentucky purchase and procure a quantity of intoxicating liquor, to-wit:' one quart thereof, contained in bottles, and did then and there board a certain trolley car, being operated by a common carrier corporation engaged in interstate commerce, and by means thereof, did cause himself. and the said intoxicating liquor, then upon his person, to be carried and transported in interstate commerce into the State of West Virginia. It is charged that Hill violated the Act of Congress approved March 3, 1917, commonly known as the Reed Amendment, by thus carrying in interstate commerce from Kentucky to West Virginia a quantity of intoxicating liquor as a beverage for his personal use, the manufacture and sale of intoxicating liquors for beverage purposes being then prohibited by the laws of the State of West Virginia. Further, that the intoxicating liquor was not ordered, purchased, or caused to be transported for scientific, sacramental, medicinal, or mechanical purposes.

The Reed Amendment is a part of § 5 of the Post-Office Appropriation Act, approved March 3, 1917, c. 162, 39 Stat. 1058, 1069, and reads as follows:

". . . Whoever shall order, purchase, or cause intoxicating liquors to be transported in interstate commerce, except for scientific, sacramental, medicinal, and mechanical purposes, into any State or Territory the laws of which State or Territory prohibit the manufacture or sale therein of intoxicating liquors for beverage purposes shall be punished as aforesaid: *Provided,* That nothing herein shall authorize the shipment of liquor into any State contrary to the laws of such State. . ."

The ground of decision, as appears by the opinion of the District Court, was that the phrase: "transported in interstate commerce," as used in the act, was intended to mean and apply only to liquor transported for commercial purposes. This conclusion was reached from a

construction of the act when read in the light of other legislation of Congress upon the subject of interstate transportation of liquor. Attention was called to the terms of the Wilson Act of 1890, c. 728, 26 Stat. 313, providing that intoxicating liquors transported into any State or Territory, or remaining therein for use, consumption, sale or storage, shall be subject on their arrival therein to the operation of the laws of the State or Territory enacted in the exercise of the police power. Reference was also made to the subsequent legislation known as the Webb-Kenyon Act, March 1, 1913, c. 90, 37 Stat. 699, prohibiting the shipment and transportation of intoxicating liquor from one State into another State when such liquor is intended to be received, possessed, sold or used in violation of the laws of such State. Advertence was made to the fact that the provisions of both the Wilson and Webb-Kenyon Acts apply broadly to the interstate transportation of liquors whether for commercial use or otherwise. It was concluded that Congress in the enactment of the Reed Amendment intended to aid the local law of the State by preventing shipment of intoxicating liquors in interstate commerce when intended for commercial purposes; and as the law of West Virginia permits any person to bring into the State not more than one quart of liquor, in any period of thirty days, for personal use, Congress did not intend to prohibit interstate transportation of such liquors not intended to be used for commercial purposes. We are of opinion that this is a too narrow construction of the Reed Amendment.

The Constitution confers upon Congress the power to regulate commerce among the States. From an early day such commerce has been held to include the transportation of persons and property no less than the purchase, sale and exchange of commodities. *Gibbons* v. *Ogden,* 9 Wheat. 1, 188; *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196, 203. "Importation into one State from another

is the indispensable element, the test, of interstate commerce." *International Textbook Co.* v. *Pigg,* 217 U. S. 91, 107; *Lottery Case,* 188 U. S. 321, 345. The transportation of one's own goods from State to State is interstate commerce, and, as such, subject to the regulatory power of Congress. *Pipe Line Cases,* 234 U. S. 548, 560. The transportation of liquor upon the person of one being carried in interstate commerce is within the well-established meaning of the words "interstate commerce." *United States* v. *Chavez,* 228 U. S. 525, 532.

Congress in the passage of the Reed Amendment must be presumed to have had, and in our opinion undoubtedly did have, in mind this well-known and often declared meaning of interstate commerce. It had already provided in the Wilson Act for state control over liquor after its delivery to the consignee in interstate commerce. In the Webb-Kenyon Act it had prohibited the shipment of liquor in interstate commerce where the same was to be used in violation of the law of the State into which it was transported. In the passage of the Reed Amendment it was intended to take another step in legislation under the authority of the commerce clause. The meaning of the act must be found in the language in which it is expressed, when, as here, there is no ambiguity in the terms of the law. The order, purchase, or transportation in interstate commerce, save for certain excepted purposes, is forbidden. The exceptions are specific and are those for scientific, sacramental, medicinal, or mechanical purposes; and in the proviso it is set forth that nothing contained in the act shall authorize interstate commerce shipments into a State contrary to its laws.

West Virginia is a State in which the manufacture and sale of intoxicating liquors for beverage purposes is prohibited. If the act is within the constitutional authority of Congress, it follows that the indictment charged an offense within the terms of the law. That Congress posses-

-ses supreme authority to. regulate interstate commerce subject only to the limitations of the Constitution, is too well established to require the citation of the numerous cases in this court which have so held. Congress may exercise this authority in aid of the policy of the State, if it sees fit to do so. It is equally clear that the policy of Congress acting independently of the States may induce legislation without reference to the particular policy or .law of any given State. Acting within the authority conferred by the Constitution it is for Congress to determine what legislation will attain its purposes. The control of Congress over interstate commerce is not to be limited by state laws. Congress, and not the States, is given the authority to regulate interstate commerce. When Congress acts, keeping within the authority committed to it, its laws become by the terms of the Constitution itself the supreme laws of the land. "This is not to say that the Nation may deal with the internal concerns of the State, as such, but that the execution by Congress of its constitutional power to regulate interstate commerce is not limited by the fact that intrastate transactions may have become so interwoven therewith that the effective government of the former incidentally controls the latter. This conclusion necessarily results from the supremacy of the national power within its appointed sphere." *Minnesota Rate Cases,* 230 U. S. 352, 399, and previous decisions of this court therein cited.

The power of Congress, it is true, is to regulate commerce, which is ordinarily accomplished by prescribing rules for its conduct. That regulation may take the character of prohibition, in proper cases, is well established by the decisions of this court. *Lottery Case, supra; Hipolite Egg Co.* v. *United States,* 220 U. S. 45; *Hoke* v. *United States,* 227 U. S. 308; *Caminetti* v. *United States,* 242 U. S. 470; *Clark Distilling Co.* v. *Western Maryland Ry. Co.,* 242 U. S. 311; *Hammer* v. *Dagenhart,* 247 U. S. 251, 270, 271.

That Congress has this authority over the transportation of liquor in interstate commerce, we entertain no doubt. In the recent case of *Clark Distilling Co.* v. *Western Maryland Ry. Co.*, *supra*, this subject was given full consideration. That case involved the constitutionality of the Webb-Kenyon Law, prohibiting the shipment of liquors into States to be used therein in violation of the local law. While such was the particular case before the court, the authority of Congress to make regulations of its own was directly involved, and its authority over interstate commerce in intoxicating liquors was clearly stated and definitely recognized. After discussing the power of Congress over such shipment in interstate commerce, and affirming the ample power possessed by Congress over the subject-matter in view of its characteristics, this court said:

". . . we can see no reason for saying that although Congress in view of the nature and character of intoxicants had a power to forbid their movement in interstate commerce, it had not the authority to so deal with the subject as to establish a regulation (which is what was done by the Webb-Kenyon Law) making it impossible for one State to violate the prohibitions of the laws of another through the channels of interstate commerce. Indeed, we can see no escape from the conclusion that if we accepted the proposition urged, we would be obliged to announce the contradiction in terms that because Congress had exerted a regulation lesser in power than it was authorized to exert, therefore its action was void for excess of power. Or, in other words, stating the necessary result of the argument from a concrete consideration of the particular subject here involved, that because Congress in adopting a regulation had considered the nature and character of our dual system of government, State and Nation, and instead of absolutely prohibiting, had so conformed its regulation as to produce coöperation be-

tween the local and national forces of government to the end of preserving the rights of all, it had thereby transcended the complete and perfect power of regulation conferred by the Constitution."

In view of the authority of Congress over the subject-matter, and the enactment of previous legislation embodied in the Wilson and Webb-Kenyon Laws, we have no question that Congress enacted this statute because of its belief that in States prohibiting the sale and manufacture of intoxicating liquors for beverage purposes the facilities of interstate commerce should be denied to the introduction of intoxicants by means of interstate commerce, except for the limited purposes permitted in the statute which have nothing to do with liquor when used as a beverage. That the State saw fit to permit the introduction of liquor for personal use in limited quantity in nowise interferes with the authority of Congress, acting under its plenary power over interstate commerce, to make the prohibition against interstate shipment contained in this act. It may exert its authority, as in the Wilson and Webb-Kenyon Acts, having in view the laws of the State, but it has a power of its own, which in this instance it has exerted in accordance with its view of public policy.

When Congress exerts its authority in a matter within its control, state laws must give way in view of the regulation of the subject-matter by the superior power conferred by the Constitution. *Seaboard Air Line Ry.* v. *Horton,* 233 U. S. 492; *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Hesterly,* 228 U. S. 702; *St. Louis, San Francisco & Texas Ry. Co.* v. *Seale,* 229 U. S. 156; *Minnesota Rate Cases,* 230 U. S. 352.

It follows that the District Court erred in sustaining the demurrer and motion to quash, and its judgment is

*Reversed.*

Mr. Justice McReynolds dissenting.

When Hill carried liquor from Kentucky into West Virginia for his personal use he did only what the latter State permitted. Construed as forbidding this action because West Virginia had undertaken to forbid manufacture and sale of intoxicants, the Reed Amendment in no proper sense regulates interstate commerce, but is a direct intermeddling with the State's internal affairs. Whether regarded as reward or punishment for wisdom or folly in enacting limited prohibition, the amendment so construed, I think, goes beyond federal power; and to hold otherwise opens possibilities for partial and sectional legislation which may destroy proper control of their own affairs by the several States.

If Congress may deny liquor to those who live in a State simply because its manufacture is not permitted there, why may not this be done for any suggested reason, e. g., because the roads are bad or men are hanged for murder or coals are dug. Where is the limit?

The Webb-Kenyon Law, upheld in *Clark Distilling Co.* v. *Western Md. Ry. Co.*, 242 U. S. 311, is wholly different from the act here involved. It suspends as to intoxicants moving in interstate commerce the rule of freedom from control by state action which the courts infer from congressional silence or failure specifically to regulate. "The absence of any law of Congress on the subject is equivalent to its declaration that commerce in that matter shall be free." *Bowman* v. *Chicago & Northwestern Ry. Co.*, 125 U. S. 465, 508; *Leisy* v. *Hardin*, 135 U. S. 100, 119. In plain terms, it permits state statutes to operate and thereby negatives any inference drawn from silence. The Reed Amendment as now construed is a congressional fiat imposing more complete prohibition wherever the State has assumed to prevent manufacture *or* sale of intoxicants.

Mr. Justice Clarke concurs in this dissent.