UNITED STATES v. LUTHER.

(District Court, E. D. Oklahoma. September 20, 1919.)

No. 3418.

1. INDIANS ⚖=35—CARRYING INTOXICATING LIQUORS INTO INDIAN COUNTRY AN OFFENSE.

The provision of Act March 1, 1895, § 8 (Comp. St. § 4136b), making it an offense to carry or have carried intoxicating liquors into Indian Territory, *held* not repealed by implication by Act March 3, 1917, § 5 (Comp. St. 1918, §§ 8739a, 10387a–10387c), and to be still in force in that part of Oklahoma then comprising Indian Territory.

2. INDICTMENT AND INFORMATION ⚖=86(3)—FOR HAVING POSSESSION OF LIQUOR IN INDIAN COUNTRY NEED NOT STATE PLACE OF OFFENSE.

An indictment for having possession of liquor in the Indian country, in violation of Act May 25, 1918, § 1 (Comp. St. 1918, § 4137aa), *held* not subject to demurrer, because it did not specifically designate the particular location in the Indian country within the named district.

3. INDICTMENT AND INFORMATION ⚖=129(1)—JOINDER OF COUNTS FOR CARRYING LIQUOR INTO INDIAN TERRITORY AND HAVING IT IN POSSESSION PROPER.

Under Rev. St. § 1024 (Comp. St. § 1690), a count for unlawfully carrying liquor into the Indian country and one for there having it in his possession may be joined in the same indictment.

Criminal prosecution by the United States against William Luther. On demurrer to indictment. Overruled.

W. P. McGinnis, U. S. Atty., and H. T. Church, Asst. U. S. Atty., both of Muskogee, Okl.

Frank Lee and J. C. Denton, both of Muskogee, Okl., for defendant.

WILLIAMS, District Judge. The indictment contains two counts; the first charging the defendant with the introduction of intoxicating liquors into the Eastern district, in that portion of the state of Oklahoma which was formerly Indian Territory, from without the state, in violation of section 8 of the act of March 1, 1895 (28 Stat. 697, c. 145 [Comp. St. § 4136b]). The second count charges the defendant with having possession, custody, and control of intoxicating liquors in Indian country, in violation of Act May 25, 1918, c. 86, § 1, 40 Stat. 1045 (16 Supp. Fed. St. Ann. 37 [Comp. St. 1918, § 4137aa]).

Defendant has demurred on the following grounds: (1) No violation of any law of the United States charged; (2) the Indian country in which the defendant is alleged to have had possession of said liquor is not sufficiently described or designated; and (3) indictment is duplicitous, in that two separate and distinct offenses are charged.

[1] (a) The first ground is directed to the first count, on defendant's theory that section 8 of the act of March, 1895, so far as it relates to the introduction of intoxicating liquors by means of interstate commerce into what was formerly Indian Territory, has been repealed by section 5 of the act of March 3, 1917 (39 Stat. 1069, c. 162 [Comp. St. 1918, §§ 8739a, 10387a–10387c]; sections 9 and 10, Supp. Fed. Stat.

Ann. 62). The act of March 1, 1895, entitled "An act to provide for the appointment of additional judges of the United States Court in the Indian Territory, and for other purposes," contains 13 sections:

(1) Indian Territory divided into three judicial districts; (2) two additional judges; (3) clerks and deputies; (4) United States commissioners, and extensions of certain criminal law of Arkansas and procedure to the Indian Territory, and appeals; (5) constables; (6) jurors; (7) venue as to criminal and civil suits; (8) "that any person, whether an Indian or otherwise, who shall, in said territory, manufacture, sell, give away, or in any manner, or by any means furnish to any one, either for himself or another, any vinous, malt, or fermented liquors, or any other intoxicating drinks of any kind whatsoever, whether medicated or not, or who shall carry, or in any manner have carried, into said territory, any such liquors or drinks, or who shall be interested in such manufacture, sale, giving away, furnishing to any one, or *carrying into said territory any of such liquors or drinks* [italics mine], shall, upon conviction thereof, be punished by fine not exceeding five hundred dollars and by imprisonment for not less than one month nor more than five years;" (9) jurisdiction in civil and criminal cases; (10) provision for courtroom, custody of prisoners, and (11) appellate procedure; (12) fees; and (13) "that none of the provisions of any other acts, or of any of the laws of the United States, or of the state of Arkansas, heretofore put in force in said Indian Territory, except so far as they come in conflict with the provisions of this act, are intended to be repealed, or in any manner affected by this act, but all such acts and laws are to remain in full force and effect in said territory."

All of said act of March 1, 1895, except that portion of section 8 which relates to "carrying into said territory any of such liquors or drinks," was repealed or superseded by virtue of the Enabling Act of the state of Oklahoma (Act June 16, 1906, c. 3335, 34 Stat. 267), when it was admitted pursuant thereto as a state on November 16, 1907. Ex parte Webb, 225 U. S. 663, 32 Sup. Ct. 769, 56 L. Ed. 1248; United States v. Wright, 229 U. S. 226, 33 Sup. Ct. 630, 57 L. Ed. 1160; Joplin Mercantile Co. v. United States, 236 U. S. 531, 35 Sup. Ct. 291, 59 L. Ed. 705; Id., 213 Fed. 926, 131 C. C. A. 160, Ann. Cas. 1916C, 470.

Congress in the Enabling Act (section 3) had required:

"That the manufacture, sale, barter, giving away, or otherwise furnishing * * * of intoxicating liquors within those parts of said state now known as the Indian Territory and the Osage Indian Reservation and within any other parts of said state which existed as Indian reservations on the first day of January, nineteen hundred and six, is prohibited for a period of twenty-one years from the date of the admission of said state into the Union, and thereafter until the people of said state shall otherwise provide by amendment of said Constitution and proper state legislation. * * *"

Section 5 of the act of March 3, 1917 (39 Stat. 1069, c. 162; section 8352, Barnes' Fed. Code), entitled:

"An act making appropriations for the service of the Post Office Department for the fiscal year ending June thirtieth, nineteen hundred and eighteen, and for other purposes"

—is as follows:

"Sec. 5. That no letter, postal card, circular, newspaper, pamphlet, or publication of any kind containing any advertisement of spirituous, vinous, malted, fermented, or other intoxicating liquors of any kind, or containing a solicitation of an order or orders for said liquors, or any of them, shall be deposited in or carried by the mails of the United States, or be delivered by any postmaster

or letter carrier, when addressed or directed to any person, firm, corporation, or association, or other addressee, at any place or point in any state or territory of the United States at which it is by the law in force in the state or territory at that time unlawful to advertise or solicit orders for such liquors, or any of them, respectively.

"If the publisher of any newspaper or other publication or the agent of such publisher, or if any dealer in such liquors or his agent, shall knowingly deposit or cause to be deposited, or shall knowingly send or cause to be sent, anything to be conveyed or delivered by mail in violation of the provisions of this section, or shall knowingly deliver or cause to be delivered by mail anything herein forbidden to be carried by mail, shall be fined not more than $1,000 or imprisoned not more than six months, or both; and for any subsequent offense shall be imprisoned not more than one year. Any person violating any provision of this section may be tried and punished, either in the district in which the unlawful matter or publication was mailed or to which it was carried by mail for delivery, according to direction thereon, or in which it was caused to be delivered by mail to the person to whom it was addressed. * * *"

Said section deals primarily with postal matters and the use of such agencies in furtherance of the sale and purchase of intoxicating liquors, closing with the following paragraph:

"Whoever shall order, purchase, or cause intoxicating liquors to be transported in interstate commerce, except for scientific, sacramental, medicinal, and mechanical purposes, into any state or territory *the laws of which state or territory prohibit* [italics mine] the manufacture or sale therein of intoxicating liquors for beverage purposes shall be punished as aforesaid: Provided, that nothing herein shall authorize the shipment of liquor into any state contrary to the laws of such state: Provided further, that the Postmaster General is hereby authorized and directed to make public from time to time in suitable bulletins or public notices the names of states in which it is unlawful to advertise or solicit orders for such liquors."

Congress provided in the Wilson Act (Act Aug. 8, 1890, c. 728, 26 Stat. 313 [Comp. St. § 8738]) for state control over liquor after its delivery in interstate commerce to the consignee. The Webb-Kenyon Act (Act March 1, 1913, c. 90, 37 Stat. 699 [Comp. St. § 8739]) prohibited the shipment in interstate commerce of liquor, where the same was to be used in violation of the laws of the state into which it is transported. The act of March 3, 1917, was another step under the authority of Congress in aid of the policy of the states. It was not within the power of the states by state law to limit the control of Congress over interstate commerce. But Congress may regulate interstate commerce in aid of state policy. United States v. Hill, 248 U. S. 420, 39 Sup. Ct. 143, 63 L. Ed. 337.

Defendant's contention is that the special act of March 1, 1895, is repealed by implication in toto by the general act of March 3, 1917. That such repeals by implication are not favored is a rule of construction firmly established. Sections 2139, 2140, and 2141, Revised Statutes of the United States, and the subsequent amendatory acts of July 23, 1892 (27 Stat. 260, c. 234), and of January 30, 1897 (29 Stat. 506, c. 109), and of May 18, 1916 (39 Stat. 124, c. 125 [Comp. St. §§ 4136a, 4137, 4141, 4144, 4144a]), comprise legislation prohibiting the introduction under any pretense in the Indian country and the disposal or sale of any malt, spirituous, or vinous liquor, including beer, ale, and wine, or any ardent or other intoxicating liquor of any

582 · 260 FEDERAL REPORTER

kind whatsoever, or any essence, extract, bitters, preparation, compound, composition, or any article whatsoever, under any name, label, or brand, which produces intoxication, to any Indian to whom an allotment of land has been made, while the title to the same shall be held in trust by the government, or to any Indian or ward of the government under charge of any Indian superintendent or agent, or any Indian, including mixed bloods, over whom the government, through its departments, exercises guardianship.

Said act of Congress of May 18, 1916 (39 Stat. 124, c. 125 [Comp. St. § 4144a]), provides that:

"The provisions of sections twenty-one hundred and forty and twenty-one hundred and forty-one of the Revised Statutes of the United States shall also apply to beer and other intoxicating liquors named in the act of January thirtieth, eighteen hundred and ninety-seven (Twenty-Ninth Statutes at Large, page five hundred and six), and the possession by a person of intoxicating liquors in the country where the introduction is prohibited by treaty or federal statute shall be prima facie evidence of unlawful introduction."

By Act Cong. June 30, 1919, c. 4, it is provided that:

"On and after July 1, 1919, possession by a person of intoxicating liquors in the Indian country, or where the introduction *is or was prohibited by treaty or federal statute* [italics mine] shall be an offense and punished in accordance with the provisions of the acts of July 23, 1892 (27 Stat. 260), and January 30, 1897 (29 Stat. 506)."

By Act March 2, 1917, c. 146, 39 Stat. 969, entitled:

"An act making appropriations for the current and contingent expenses of the Bureau of Indian Affairs, for fulfilling treaty stipulations with various Indian tribes, and for other purposes, for the fiscal year ending June thirtieth, nineteen hundred and eighteen"

—Congress in making appropriation, "For the suppression of the traffic in intoxicating liquors among Indians, $150,000," added the proviso [Comp. St. 1918, § 4141a] that:

"Automobiles or any other vehicles or conveyances used in introducing, or attempting to introduce, intoxicants into the *Indian country, or where the introduction is prohibited by treaty or federal statute, whether used by the owner thereof or other person, shall be subject to the seizure, libel, and forfeiture provided in section twenty-one hundred and forty of the Revised Statutes of the United States.*" (Italics mine.)

Beginning with June 21, 1906 (34 Stat. 328, c. 3504), and continuing to the present time, Congress has made provision for the suppression of intoxicating liquors among Indians. See United States v. One Seven-Passenger Paige Car (D. C.) 259 Fed. 641. These acts of Congress relating to such matter are a legislative construction that the act of March 1, 1895, was not intended to be repealed in toto by the act of March 3, 1917. Tiger v. Western Investment Co., 221 U. S. 309, 31 Sup. Ct. 578, 55 L. Ed. 738. See, also, United States v. One Seven-Passenger Paige Car (D. C.) 259 Fed. 641; United States v. One Cadillac Eight Automobile (D. C.) 255 Fed. 173; United States v. One Buick Automobile (D. C.) 255 Fed. 793. Besides, the act of March 3, 1917, in aid of the policy of the states, covered only intoxicating liquors "transported in interstate commerce," while the act of

March 1, 1895 includes every manner of carrying into what was formerly the Indian Territory from without the state of Oklahoma. United States v. Simpson (D. C.) 257 Fed. 860.

I conclude that section 8 of the act of March, 1895, as to the introduction of intoxicating liquors from without the state of Oklahoma into what was formerly the Indian Territory, is not repealed in toto by the act of March 3, 1917.

[2] (b) For his second ground, defendant contends the indictment does not inform him of the nature or cause of the accusation, as required by the Fifth Amendment to the United States Constitution, and particularly in that the second count does not sufficiently describe the particular Indian country in Ottawa county in which the defendant is alleged to have had the possession, custody, and control of the intoxicating liquors. The act of May 25, 1918 (1918 Supp. Fed. St. Ann. 264 [Comp. St. 1918, § 4137aa]), provides:

" * * * That on and after September first, nineteen hundred and eighteen, possession by a person of intoxicating liquors in the Indian country where the introduction is or was prohibited by treaty or federal statute shall be an offense and punished in accordance with the provisions of the Acts of July twenty-third, eighteen hundred and ninety-two (27 Stat. at Large, 260), and January thirtieth, eighteen hundred and ninety-seven (29 Stat. at Large, 506)."

Indian country as defined by Act Jan. 30, 1897, includes:

"Any Indian allotment while the title to the same shall be held in trust by the government, or while the same shall remain inalienable by the allottee without the consent of the United States."

See, also, Clairmont v. United States, 225 U. S. 551, 32 Sup. Ct. 787, 56 L. Ed. 1201; Evans v. Victor, 204 Fed. 361, 122 C. C. A. 531.

The general rule is that an indictment is sufficient which charges the offense in the language of the statute creating same, or acts coming within the statutory description in the substantial words of the statute, without further expansion of the matter. Pounds v. United States, 171 U. S. 35, 18 Sup. Ct. 729, 43 L. Ed. 62; Ledbetter v. United States, 170 U. S. 610, 18 Sup. Ct. 774, 42 L. Ed. 1162; United States v. Simmons, 96 U. S. 362, 24 L. Ed. 819; Tapack v. United States, 220 Fed. 447, 137 C. C. A. 39. In Joplin Mercantile Co. v. United States, 213 Fed. 929, 131 C. C. A. 163, Ann. Cas. 1916C, 470, it is said:

"If an indictment was returned which charged a defendant with introducing liquor into the Indian country, upon the trial a question of fact would at once arise as to whether the place to which they were imported remained Indian country under the acts of 1892 and 1897; but, if the charge was under the act of 1895, the sole question would be whether the liquor had been carried into a geographical location fixed and determined."

In Malcolm v. United States, 256 Fed. 363, —— C. C. A. ——, it is said:

"In our judgment it would have been sufficient merely to charge, in the language of the statute, the transportation of the whisky in question into the state of West Virginia, without naming the particular place, or even the state, from which it was transported. Omission of the point of origin might have entitled defendant to a bill of particulars, but it would not have served to render the indictment demurrable."

In Williams v. United States, 158 Fed. 30, 88 C. C. A. 296, the indictment charged the defendant with removing certain spirits to a place not authorized by law, without setting out the place to which the same were removed, and the indictment was challenged both on demurrer and by motion in arrest of judgment. One of the objections raised was that the indictment did not specify the place to which said liquors were removed, nor describe the same. In the opinion it is said:

"It is not essential to specify in the indictment the name of the person to whom, or the place where, the casks were sent. That was mere matter of evidence, and not of the substance of the offense. Of all men the defendant knew to whom and where he had sent the casks; and, if he desired information from the prosecution, he could have protected himself against surprise at the trial by demanding in advance a bill of particulars. The indictment was sufficient."

Here the gravamen of the offense is the possession "of intoxicating liquors in the Indian country or where the introduction is or was prohibited by treaty or federal statute." As to the particular location in the Indian country in the Eastern district, that is a matter of evidence, and not of the substance of the offense. If the defendant desires this information from the prosecution, so as to fortify himself against surprise at the trial, he may secure same by demanding in advance a bill of particulars. See, also, section 1025, Rev. Stat., Comp. St. § 1691 (1429, Barnes' Fed. Code; 194 Byrne's Fed. Crim. Proc.).

[3] (c) As to third ground of defendant's demurrer as to duplicity, it seems that such question may not here be raised by demurrer. Pooler v. United States, 127 Fed. 509, 62 C. C. A. 307; Chambliss v. United States, 218 Fed. 156, 132 C. C. A. 112. However, section 1024, Rev. Stat., Comp. St. § 1690 (1428, Barnes' Fed. Code; Byrne's Fed. Crim. Proc.) provides:

"When there are several charges against any person for the same act or transaction, or for two or more acts or transactions, connected together, or for two or more acts or transactions of the same class of crimes or offenses, which may be properly joined, instead of having several indictments the whole may be joined in one indictment in separate counts; and if two or more indictments are found in such cases, the court may order them to be consolidated."

See, also, Dillard v. United States, 141 Fed. 305, 72 C. C. A. 451; Pointer v. United States, 151 U. S. 400, 14 Sup. Ct. 410, 38 L. Ed. 208; Pierce v. United States, 160 U. S. 355, 16 Sup. Ct. 321, 40 L. Ed. 454; Williams v. United States, 168 U. S. 390, 18 Sup. Ct. 92, 42 L. Ed. 509.

An order will be entered overruling defendant's demurrer.