## UNITED STATES v. WRIGHTWOOD DAIRY CO. (two cases).
### Nos. 7619, 7620.

Circuit Court of Appeals, Seventh Circuit.
Oct. 27, 1941.

Writ of Certiorari Granted Dec. 8, 1941.

See 62 S.Ct. 362, 86 L.Ed. ——.

J. Albert Woll, U. S. Atty., of Chicago, Ill., and John S. L. Yost, Dept. of Justice, and Mary Connor Myers, Dept. of Agriculture, both of Washington, D. C., for the United States.

Alvin E. Stein and Abraham Lepine, both of Chicago, Ill., for Wrightwood.

Before SPARKS, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

These appeals involve an order, known as Order No. 41, issued by the Secretary of Agriculture pursuant to the authority conferred upon him by the Agricultural Marketing Agreement Act of 1937, 7 U.S.C.A. § 601 et seq. The United States brought the action under Sec. 608a(6) of the Act to enforce specifically the provisions of

Order No. 41 and "to prevent and restrain" the defendant, Wrightwood Dairy Co., from handling milk in violation of the provisions of the Order. The trial court dismissed the complaint and in accordance with the prayer of defendant's counterclaim directed the issuance of a permanent injunction restraining the Government, its officers, and agents from enforcing Order No. 41 against the defendant. No. 7619 is an appeal by the United States from the dismissal of the complaint and the granting of the defendant's prayer for relief. No. 7620 is defendant's cross-appeal from certain rulings of the trial court.

The purpose of Order No. 41 was to regulate the handling of milk in the Chicago, Illinois marketing area to the extent that the milk covered was in the current of interstate commerce or directly burdening, obstructing, or affecting such commerce. The mechanics of this type of regulation are so fully discussed in United States v. Rock Royal Co-Operative, Inc., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446, that it would be bootless to restate them. It is sufficient to say that the plaintiff considered the defendant subject to the regulations of the Order because its handling of the milk was deemed to be in the current of interstate commerce as defined in § 10(j),[1]—or directly burdened, obstructed, or affected interstate commerce in milk marketed within the area and the defendant therefore was a handler of milk as defined in § 8c(1) of the Act.

It is undisputed, in fact it is conceded that the defendant purchased its total daily milk requirements from approximately 70

[1] (j) "The term 'interstate or foreign commerce' means commerce between any State, Territory, or possession, or the District of Columbia, and any place outside thereof; or between points within the same State, Territory, or possession, or the District of Columbia, but through any place outside thereof; or within any Territory or possession, or the District of Columbia. For the purpose of this Act [chapter] (but in nowise limiting the foregoing definition) a marketing transaction in respect to an agricultural commodity or the product thereof shall be considered in interstate or foreign commerce if such commodity or product is part of that current of interstate or foreign commerce usual in the handling of the commodity or product whereby they, or either of them, are sent from one State to end their transit, after purchase, in another, including all cases where purchase or sale is either for shipment to another State or for the processing within the State and the shipment outside the State of the products so processed. Agricultural commodities or products thereof normally in such current of interstate or foreign commerce shall not be considered out of such current through resort being had to any means or device intended to remove transactions in respect thereto from the provisions of this Act [chapter]. As used herein, the word 'State' includes Territory, the District of Columbia, possession of the United States, and foreign nations."

producers located entirely within the State of Illinois. It processed the milk in its Chicago plant, never intermingled it with any milk which had crossed the state line, and sold and distributed the processed product solely within the State of Illinois in competition with the milk of other handlers in the marketing area which Order No. 41 sought to embrace. Over 60% of the milk handled in the Chicago Marketing area was produced in the State of Illinois; the remaining milk handled in the area was produced in Wisconsin, Indiana, and Michigan.

The trial court found that the defendant's activities were intrastate, its handling of milk was not in the current of interstate and foreign commerce and "did not directly burden, obstruct, or affect interstate or foreign commerce in milk market with the Chicago marketing area." The court held that the defendant was not a handler of milk as defined in § 8c(1) of the Agricultural Marketing Agreement Act of 1937, and consequently was not subject to the provisions of Order No. 41.

The basic question before this court is whether the defendant was subject to the regulations of Order No. 41 as a handler of milk under § 8c(1) of the Act. It is plaintiff's contention that a mere showing of competition by the milk distributor with other handlers operating in a market under the regulation of an order such as No. 41 is sufficient to subject the distributor to the regulations even though its operations are wholly intrastate.

Counsel for plaintiff relies upon United States v. Rock Royal Co-Operative, supra. We are not convinced that that case sustains his position. The Supreme Court did not have before it the issue of the applicability of an order to a distributor whose activities were wholly intrastate. In that case the court said (307 U.S. at page 541, 59 S.Ct. at page 998, 83 L.Ed. 1446): "The state order was eliminated from consideration on the understanding, not questioned here, that the milk of all four defendants is covered by the Federal Order, if valid." Further on in the opinion the court said (307 U.S. at page 568, 59 S.Ct. at page 1010, 83 L.Ed. 1446): "There is no challenge to the fact that the milk of all four defendants reaches the marketing area through the channels of interstate commerce." It is true that Mr. Justice Reed then said: "Nor is any question raised as to the power of the Congress to regulate the distribution in the area of the wholly intrastate milk." From this we believe the Supreme Court did not intend to preclude this important question, now before us, which was not an issue in the case before it.

The case of United States v. Adler's Creamery, Inc., 2 Cir., 107 F.2d 987, and Id., 2 Cir., 110 F.2d 482, did involve a handler of wholly intrastate milk in the New York Metropolitan marketing area. There the court held that the handler was subject to the provisions of the Order. The court relied upon the Rock Royal case, supra; Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441, and Mulford v. Smith, 307 U.S. 38, 59 S.Ct. 648, 652, 83 L.Ed. 1092. In so far as the court relied upon the inapposite remark made in the Rock Royal case, we do not accept it as persuasive authority for plaintiff's contention.

Currin v. Wallace, supra, and Mulford v. Smith, supra, certainly do not support the plaintiff's contention when applied to the defendant's activity in the case before this court. Currin v. Wallace merely held that Congress could regulate the auction sale of tobacco since almost all of the tobacco there sold was to go into interstate commerce. In Mulford v. Smith the record disclosed that at least two-thirds of all flue-cured tobacco sold at auction warehouses was sold for immediate shipment to an interstate or foreign destination. The court held that the regulation was "of interstate commerce, which it reaches and affects at the throat where tobacco enters the stream of commerce—the marketing warehouse." In the instant case, in no such degree was the handling of milk by the defendant associated with interstate commerce.

An examination of the interpretation of the comparable commerce provisions of the National Labor Relations Act likewise fails to show implicit recognition of the broad sweep of authority claimed by the plaintiff in applying Order No. 41.

A study of the various cases construing the commerce clause reveals nothing to support the plaintiff's contention that a finding of competition with interstate handlers was sufficient to subject the defendant, in our case to the Act. It is true that cases such as Reid v. Colorado, 187 U.S. 137, 23 S.Ct. 92, 47 L.Ed. 108; Hipolite Egg Co. v. United States, 220 U.S. 45, 31 S.Ct. 364, 55 L.Ed. 364; United States v. Hill, 248 U.S. 420, 39 S.Ct. 143, 63 L.Ed. 337; and

United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430, prohibit certain movements into interstate commerce, but clearly the milk handled by the defendant was neither in interstate commerce nor ever intended to flow in it. And while Loewe v. Lawlor, 208 U.S. 274, 28 S.Ct. 301, 52 L.Ed. 488, 13 Ann.Cas. 815; Duplex Printing Press Co. v. Deering, 254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196; and Bedford Cut Stone Co. v. Journeymen Stone Cutters' Ass'n, 274 U.S. 37, 47 S.Ct. 522, 71 L. Ed. 916, 54 A.L.R. 791, sanction action under the commerce clause when there is interference with interstate commerce before the actual movement has started, the milk handled by the defendant in our case was never going to get into interstate commerce and impinged upon it only by competing with some milk which had been in interstate commerce. It is also true that the Shreveport Case, 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341; Railroad Commission of Wisconsin v. Chicago, B. & Q. R. Co., 257 U.S. 563, 42 S.Ct. 232, 66 L.Ed. 371, 22 A.L.R. 1006; Currin v. Wallace, supra, and Mulford v. Smith, supra, permit the regulation of intrastate transactions which are closely commingled with or related to the interstate commerce regulated. However, these cases do not extend to the facts before us.

■ The difference between a direct and indirect effect on commerce is not hard and fast; it is at best a matter of degree. The determination of degree and the resulting allocation of power over commerce rest upon the court, but that determination must ever be within the matrix of the federal system.

In Schechter Poultry Corp. v. United States, 295 U.S. 495, 520, 548, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947, the unreversed findings of the Circuit Court of Appeals, 2 Cir., 76 F.2d 617, 618, were that 96% of the chickens involved under the particular code came from interstate commerce to be disposed of in New York; that the practice sought to be regulated not only demoralized the business in New York, but had national repercussions affecting and controlling the prices received by those engaged in interstate commerce. Under such circumstances the court held that the effect upon interstate commerce was only an indirect one and not sufficient to permit Congressional regulation. The effect upon commerce in the case now before us is no more direct than in the Schechter case. The only substantial difference is that in the present case none of the defendant's milk was ever in interstate commerce. The milk's only possible relation to interstate commerce was with some thirty odd percent of the milk in the area which had been brought into the state, processed, and then sold in competition with defendant's.

To be sure the milk problem is a serious one and apparently for the most effective control requires unified regulations. Cf. Nebbia v. New York, 291 U.S. 502, 54 S. Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469, and Till, "Milk—The Politics of an Industry" at p. 431 of "Price and Price Policies." Unfortunately, if the defendant is not subject to the regulations of Order No. 41, the result may well be that the effective sanction of the order will wither before the force of competition, the morale of the market will disintegrate, and this attempt at solution of the problem by the National Government will fail. When a problem of our present day economy requires unified action there sometime is an hiatus in the powers granted to the United States and those not prohibited to the states so that no solution will be possible without the co-operation of states and nation. That hiatus is implicit in a federal system of government. If the powers of the National Government were complete and the states were only administrative agencies whose powers existed solely at the sufferance of the National Government, this difficulty, at least, would cease to exist.

On principle, we are unable to accept plaintiff's contention that "only one factual element is essential to subject a milk distributor whose operations are wholly intrastate in character" to the Order, and that is a showing "that such handler competes with other handlers operating in the market who are subject to the regulation." To do so would be to subscribe to a view of causation which, as Justice Cardozo said in the Schechter case, supra, 295 U.S. at page 554, 55 S.Ct. at page 855, 79 L.Ed. 1570, 97 A.L.R. 947, "would obliterate the distinction between what is national and what is local in the activities of commerce."

■ We conclude that a commodity wholly intrastate in character and handling does not directly burden, obstruct, or affect interstate commerce where the point of impingement of the intrastate transaction upon the interstate transaction is one of competition only.

We now come to a consideration of defendant's cross-appeal by which it is claimed that the District Court failed to find that Order 41 was not in compliance with the law, that it was invalid and unenforceable and that the court erred in sustaining plaintiff's motion to strike defendant's fourth to eleventh defenses. In view of what we have earlier said in this opinion, we do not deem it necessary to discuss the errors assigned. The cross-appeal in No. 7620 will be dismissed. The judgment of the District Court in No. 7619 will be affirmed.