## JONES et al. v. SPRINGFIELD MISSOURI PACKING CO.

No. 199.

District Court, S. D. Missouri, W. D.

July 9, 1942.

E. C. Hamlin (of Hamlin, Hamlin & Hamlin), of Springfield, Mo., for plaintiff.

Farrington & Curtis, of Springfield, Mo., for defendant.

REEVES, District Judge.

This is a suit authorized by Section 216, Title 29 U.S.C.A., for an alleged violation of the Fair Labor Standards Act. It is charged in the complaint that the defendant, a Missouri corporation, is engaged "in the business of killing, producing, processing and preparing for transportation in interstate commerce hides, greases and tallows, cured and fresh meats, which are the products from the killing and slaughtering of animals for the same, and in the distribution in the markets in interstate commerce between the several states."

It is further stated that the several plaintiffs were in the employ of the defendant from and after the effective date of the Fair Labor Standards Act, namely, October 24, 1938, until the termination of such employment at definite times later. During such employment, and after the effective date of the law, it is asserted that each of the plaintiffs worked hours longer than those prescribed and limited by the law without compensation as contemplated by said law. Each of the plaintiffs seeks recovery for alleged unpaid wages and for penalties as directed by the statute and also for attorneys' fees.

Defendant has interposed numerous defenses; the chief one being that the defendant is not engaged in interstate commerce but, even if so, the plaintiffs were not "engaged in commerce or in the production of goods for commerce" during the time of their employment.

If, upon the facts, it should appear that the defendant is correct in this contention it then becomes unnecessary to consider other questions raised. The evidence showed that the defendant is engaged as asserted by the plaintiffs, in the business of slaughtering, processing and producing edible meats with the incidental by-products of hides, greases, tallows and offal. Animals for slaughter are bought locally and some shipped from other states. Its products, however, are sold locally. It distributes its meats over fixed routes within the State of Missouri. It has been careful not to sell its meat products outside of the state, and, because of that fact, it has never been subject to federal inspection.

At the trial a question arose as to whether or not it transported and sold some of its meat products in the state of Arkansas. It was contended by plaintiffs that it regularly sold products at Blue Eye, a village or hamlet on or near the state line between the states of Missouri and Arkansas. The evidence was that Blue Eye, according to postal records, is in Missouri, and that there is no post office known as Blue Eye in Arkansas. However, since the question was raised whether its products were in fact flowing over into the state of Arkansas, and to avoid controversy and a possible federal inquiry, the defendant discontinued the distribution of its product at Blue Eye, Missouri. There was no substantial evidence that any of its edible products were ever sent by it or distributed into any other state than its home state, Missouri. Its by-products, such as hides, greases, tallows and offal, were all sold at Springfield, Missouri. Whether such by-products, after being sold, remained at rest in Missouri for processing or were shipped out of the state was left an open question. There was no evidence either way. Concerning the by-products, the evidence was that such constituted a very small percentage of the total products of the defendant. Ninety-five percent of its products were edible meats, and, as stated, according to the evidence these were distributed only within the State of Missouri.

As a predicate or postulate to a decision the following rules and rulings should be noted:

■ 1. Since the statute, Section 207, Title 29 U.S.C.A., specifically provides that the benefits of the statute only accrue to an employee "who is engaged in commerce or in the production of goods for commerce", it should be determined whether the plaintiffs by their labor are within the ambit of this law.

In the case of Jewel Tea Co. v. Williams, 118 F.2d 202, the Circuit Court of Appeals, Tenth Circuit, adverted to the history of the legislation. It appeared that as originally drawn the language above quoted was used, but the House of Representatives by amendment attempted to make the bill more comprehensive by using the words "employer engaged in commerce in an industry affecting commerce." This, however, was rejected by the Conference Committee. In expressing the purpose of the bill, Senator Pepper, a member of the Conference Committee, said, among other things: "I want it distinctly stated that this proposed law is not applicable to all employees of an industry which itself is engaged in interstate commerce. It is applicable only to those employees who themselves are engaged either in interstate commerce, or the production of goods for interstate commerce, and the contrary theory was definitely rejected by the Committee."

It will be seen, therefore, that unless the plaintiffs were engaged in commerce or the production of goods for commerce they are not entitled to recover even though defendant may have been otherwise engaged in interstate commerce.

■ The definition of "commerce" as set out in the statute is as follows (Section 203, Title 29 U.S.C.A.): "(b) 'Commerce' means trade, commerce, transportation, transmission, or communication among the

several States or from any State to any place outside thereof."

It follows that the commerce referred to by the Congress means interstate commerce.

■ **2.** The fact that the defendant had bought livestock for slaughtering purposes in other states does not aid the plaintiffs in their contention. It has been repeatedly held that though the employer may in fact be engaged in interstate commerce, yet this would not entitle an employee to recover except in those cases where his own work was in interstate commerce or the production of goods for interstate commerce.

In Jax Beer Company v. Redfern, 5 Cir., 124 F.2d 172, 174, the employer shipped its product to customers at Dallas, in the state of Texas. Such product was brewed in New Orleans, Louisiana, by Jackson Brewing Company. Such product was shipped direct to Jax Beer Company at Dallas, where it was unloaded and placed in the warehouse of the defendant. Jax Beer Company was a wholesale distributor of beer. The employees sought recovery of overtime compensation on the theory that in the distribution of beer within the state of Texas they were engaged in interstate commerce. The court pointed out that this law was different from that of the National Labor Relations Act. 29 U.S.C.A. § 151 et seq. In that law, the critical words "affecting commerce" were used. Such "critical words" were not used in this act. In deciding the case, the court said: "Certain it is that these employees were not producing goods for interstate commerce, and decision must turn upon whether or not they were engaged in interstate commerce within the meaning of the act. We are of opinion that the work of Redfern and Wadsworth in delivering beer for the Jax Beer Company in pursuance of its local beer distributing business was intrastate in character and that they were not 'engaged in commerce' within the meaning of the Fair Labor Standards Act."

Another case almost precisely analogous to the one under consideration was that of Swift & Co. v. Wilkerson, 5 Cir., 124 F.2d 176. That case, as here, involved the selling of meats and meat products. Swift & Co. processed and packed its meats and meat products at Dallas, from which place such products were sold to the Texas trade. A few sales, however, were made "at the plant to a man from Oklahoma." Although Swift & Co. does a packing business at Dal-

las, yet it "received more than fifty per cent of its products from without the State of Texas, and it is admitted that it was engaged in commerce and the production of goods for commerce." In holding that the employees were not entitled to recover the court said, "that the application of the minimum wage and maximum hours provisions of these sections is dependent upon the nature of the work performed by the particular employee, and not upon the fact that the business of the employer may in some manner 'affect commerce'." The court ruled that the employee worked entirely in intrastate commerce.

The same ruling was made in United States v. Wrightwood Dairy Co., 7 Cir., 123 F.2d 100. Also in Jewel Tea Co. v. Williams, supra, where the court said, 118 F.2d loc. cit. 207: "The mere fact that an anticipated local transaction causes a movement in interstate commerce is not sufficient to constitute the local transaction a part of interstate commerce." The courts support this doctrine by citing the well-known and now famous "dead chicken" case, commonly known as Schechter Poultry Corporation v. United States, 295 U.S. 495, loc. cit. 543, 55 S. Ct. 837, 79 L.Ed 1570, 97 A.L.R. 947. While this case has been much discussed, the principles enunciated by it have not been altered or modified by subsequent court ruling.

■ **3.** Another principle applicable and controlling here is that, assuming (though not finding) some of the products of the defendant found their way into interstate commerce, there was no evidence as to what part of the work of the plaintiffs was in interstate commerce and what part in intrastate commerce.

In Super-Cold Southwest Co. v. McBride, 124 F.2d 90, 92, the Court of Appeals, Fifth Circuit, said: "An employee working both inter-state and intra-state must point out what part of his work was in intra- and what part in inter-state commerce." Able Judge Hutcheson, who wrote the opinion in this case, expressed the same view in his separate concurring opinion in White Motor Co. v. Littleton, 5 Cir., 124 F.2d 92.

In harmony with, and adhering to the foregoing authorities, are the following cases: Moses v. McKesson & Robbins, D.C., 43 F.Supp. 528; Holland v. Haile Gold Mines, D.C., 44 F.Supp. 641; Corbett v. Schlumberger Well Surveying Corp., D.C., 43 F.Supp. 605.

4. It was upon the above principles that Judge Vaught based his opinion in the case of Fleming v. Peoples Packing Co., D.C., 42 F.Supp. 868. The only difference between that case and the one at bar is the fact that the employer in the Oklahoma case did not purchase its stock for slaughtering purposes outside the state of Oklahoma. Otherwise the principles of that case apply perfectly to the facts under consideration here.

According to the evidence the plaintiffs were engaged in the production of goods distributed solely in intrastate commerce. While it was shadowy as to what became of the by-products, constituting a negligible portion of the defendant's production, yet, as held by the authorities, in the absence of evidence as to what portion of the labor was devoted to such by-products and what portion to the principal product, recovery should be denied.

In view of the foregoing it is unnecessary to discuss other questions presented in the briefs of counsel. The plaintiffs are not entitled to recover, and judgment should be entered for the defendant.