UNITED STATES of America, Plaintiff,

v.

AN ARTICLE OF DRUG CONSISTING OF 197 BOXES, MORE OR LESS, EACH CONTAINING 150 CAPSULES, labeled in part: (box) " * * * K.H. 3 Geriatricum-Schwarzhaupt Each capsule contains: Procain HCl B.P. 0.05 g Hematoporphyrine base 0.002 g 150 capsules * * * Manufactured by Schwarzhaupt Ltd., Cork, Republic of Ireland * * * " etc., Defendant.

Civ. A. Nos. L–80–23, L–80–24, L–81–9, L–81–10.

United States District Court, S. D. Texas, Laredo Division.

May 29, 1981.

**468**

Anna E. Stool, Asst. U. S. Atty., Houston, Tex., for plaintiff.

Francis P. Maher, Laredo, Tex., for Premier, Inc.

Carlos Castillon, Laredo, Tex., for Inter. Bonded Warehouses.

### MEMORANDUM AND ORDER

KAZEN, District Judge.

Each of the above four cases involves the identical law question based on virtually identical facts. In each case, the United States seeks to condemn various boxes of a drug labeled either "K.H.3 Schwarzhaupt" or "K.H.3 Geriatricum-Schwarzhaupt" (hereinafter referred to simply as "K.H.3"). It is undisputed that the same drug is involved in all four cases. Premier, Inc. has appeared as an interested party in one case while International Bonded Warehouses, Inc. appears in the other three cases. All parties have filed motions for summary judgment, Rule 56, Fed.R.Civ.P., and have agreed that the disposition of these motions will effectively terminate all four cases. Under the circumstances, and for clarity of the record, it is now ORDERED that all four of the above styled cases be and they are now CONSOLIDATED into one case. All cases shall now bear the file number of Civil Action L–80–23.

The United States seeks condemnation of the boxes of K.H.3 on the grounds that they were brought into the United States in violation of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, *et seq.* (hereinafter "the Act"). All facts necessary to disposition of this case have been stipulated to by the parties or are conclusively established by uncontested affidavits.

Section 505(a) of the Act provides that "No person shall introduce or deliver for introduction into interstate commerce any new drug, unless an approval of an application filed pursuant to subsection (b) of this section is effective with respect to such drug." 21 U.S.C. § 355(a). A "new drug" is defined as

Any drug . . . the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evalu-

ate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof... 21 U.S.C. § 321(p)(1).

The Act provides that any new drug introduced into interstate commerce in violation of section 505(a) "shall be liable to be proceeded against while in interstate commerce, or at any time thereafter, on libel of information and condemned..." 21 U.S.C. § 334(a)(1). Any new drug so condemned "shall be disposed of by destruction." *Id.* (d)(1).

The parties have stipulated that the drug under seizure, K.H.3, is a "new drug" within the meaning of 21 U.S.C. § 321(p)(1), and that it is labeled for use in the treatment of disease in man. Further, that there is neither an approved "New Drug Application" nor an "Investigational Drug Exemption" in effect for K.H.3 and therefore the drug cannot come within the exemption of 21 U.S.C. § 355. The only issues to be decided, then, are (1) whether the K.H.3 under seizure was introduced "into interstate commerce" within the meaning of 21 U.S.C. § 321(p); and (2) if so, whether the United States is equitably estopped from destroying the seized drugs because of the Government's alleged prior conduct in approving the entry of the drug into the United States for export as in-bond merchandise.

■ The Court concludes that the K.H.3 under seizure was unquestionably "introduced into interstate commerce", and therefore, is liable to be proceeded against by the United States. It is fundamental that Congress has the constitutional power "to regulate Commerce with Foreign Nations, and among the several States...." U.S.Const. Art. I § 8, Cl. 3. Such power is not confined to commercial or business transactions. Indeed, "[f]rom an early date such commerce has been held to include the transportation of persons and property no

less than the purchase, sale, and exchange of commodities, *United States v. Hill*, 248 U.S. 420, 423 [39 S.Ct. 143, 144, 63 L.Ed. 337], and goods may move in commerce though they never enter the field of commercial competition." *Bell v. Porter*, 159 F.2d 117, 119 (7th Cir. 1946), *cert. denied*, 330 U.S. 813, 67 S.Ct. 1092, 91 L.Ed. 1267 (1947); *see Powell v. U. S. Cartridge Co.*, 339 U.S. 497, 512, 70 S.Ct. 755, 763, 94 L.Ed. 1017 (1950); *Archambault v. United States*, 224 F.2d 925, 928 n.3 (10th Cir. 1955).

■ Claimants urge, however, that the drugs were never introduced into interstate commerce because the drugs were transported "in bond" from the United Kingdom and the Republic of Germany to the state of Texas, solely for the purpose of being exported to foreign countries. *See* Tariff Act of 1930, 19 U.S.C. § 1553.[1] While this argument undoubtedly has a certain surface appeal, it ultimately fails. Congress has explicitly precluded the bonding of "merchandise the importation of which is prohibited." K.H.3 cannot qualify for protection under the bonding statute since it clearly cannot legally be imported under 21 U.S.C. § 355(a). *United States v. 300 Oz. Gerovital Lotion*, 492 F.Supp. 114 (C.D.Cal.1980); *Laboratories Kem, S. A., Inc.*, Civil No. 76–804–N (S.D.Cal.1979). Therefore, as improperly bonded merchandise introduced into interstate commerce, the drugs are subject to destruction under 21 U.S.C. § 344. *U. S. v. Gerovital, supra; see United States v. 76,552 Pounds of Frog Legs*, 423 F.Supp. 329, 337 (S.D.Tex.1976).

■ The Claimants here argue that since the final destination of the drug is not within the United States, the drugs have not been introduced "into" commerce. In support of this contention, they cite several cases which draw distinctions between the word "into" as opposed to the words "in", "from", and "through". The word "into" however, must be read in light of the modi-

---

1. 19 U.S.C. § 1553 provides in pertinent part: "Any merchandise, other than explosives and *merchandise the importation of which is prohibited* ... may be entered for transportation in bond through the United States by a bond-

ed carrier without appraisement or the payment of duties and exported under such regulations as the Secretary of the Treasury shall prescribe..." (emphasis added).

fying words that follow. Thus, those authorities dealing with what is meant by "into a state" or "into a country" are inapposite. The pertinent language of the Act does not simply prohibit introduction of certain drugs "into the United States" but rather "into interstate commerce". 21 U.S.C. § 355(a). The Act then defines interstate commerce as "commerce between any state or territory and any place outside thereof...." 21 U.S.C. § 321(b)(1). As mentioned above, "commerce" includes interstate shipments or transportation *as such. Powell v. U. S. Cartridge Co.*, 339 U.S. 512, 70 S.Ct. 763, 94 L.Ed. 1017. Therefore, the meaning of the term "into interstate commerce" necessarily encompasses the introduction of items into the flow of shipments and transportation within the United States.

Claimants also contend that the United States is equitably estopped from proceeding against the drugs because Claimants and others have been purchasing K.H.3 and bringing it in-bond from Europe through Texas for export for at least six years. Since the United States never proceeded against the prior shipments, Claimants claim that the United States is now estopped from proceeding against them.

■ The general rule that the government is immune from the defense of equitable estoppel has, in recent years, been severely criticized and limited. *See United States v. Georgia Pacific Co.*, 421 F.2d 92, 99 (9th Cir. 1970). The Fifth Circuit takes the position that equitable estoppel is a proper defense against the United States only in certain situations, *United States v. State of Florida*, 482 F.2d 205, 209 (5th Cir. 1973), stating the test to be:

> Whether the defense of equitable estoppel may be asserted against the United States in actions instituted by it depends upon whether such actions arise out of transactions entered into in its proprietory capacity or contract relationships, or whether the actions arise out of the exercise of its power to government. The United States is not subject to an estoppel which impedes the exercise of the

powers of government, *and is not estopped to deny the validity of a transaction or agreement which the law does not sanction. Sanitary Dist. v. The United States*, 266 U.S. 405 [45 S.Ct. 176, 69 L.Ed. 352] (1925); *Utah Power & Light Co. v. United States*, 243 U.S. 389 [37 S.Ct. 387, 61 L.Ed. 791] (1916). (emphasis added).

While the distinction between proprietary (private) and governmental (sovereign) function is not always an easy one to make, the Court is convinced that where as here the United States is suing to prevent violations of its laws, the United States is clearly exercising its powers of government and cannot be estopped from proceeding against the seized K.H.3.

For the above reasons, it is therefore ORDERED that the Motion for Summary Judgment by the United States be GRANTED and the cross-motions for summary judgment by the Claimants be DENIED.